# Philadelphia Ritz Carlton Co., Appellant, *v.* Philadelphia.

*Negligence—Municipalities—Water main—Inspection — Latent defect—Governmental function—Nonsuit.*

1. In an action against a city to recover for injuries to a building caused by the breaking of a water main in a street, a nonsuit is properly entered where there is no evidence from which a jury could find that a defect in the main was observable if proper inspection had been made.

2. Because the accident might have been prevented by adopting some special method or device when such is not commonly done by reasonably prudent persons, under similar circumstances, does not prove negligence.

3. Where a latent defect, such as a hidden and undiscovered flaw in the pipe, caused the break, the city is not responsible.

4. Not decided whether, in maintaining the fire line entirely disconnected from the general water service, a governmental function alone is performed, and therefore the city is immune from liability.

Argued January 6, 1925. Appeal, No. 208, Jan. T., 1925, by plaintiff, from order of C. P. No. 2, Phila. Co., Sept. T., 1923, No. 8965, refusing to take off nonsuit, in case of Philadelphia Ritz Carlton Co. v. City of Philadelphia. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ. Affirmed.

Trespass for injuries to a building. Before GORDON, J. The opinion of the Supreme Court states the facts.

The court entered a nonsuit ,saying: "I will enter a nonsuit in the case and sustain the motion, primarily on the ground that the evidence offered by the plaintiff in this case shows that the break occurred as a result of a hidden defect or flaw in the pipe which burst, and which was undiscoverable by reason of an ordinary inspection, —a hidden defect internal to the pipe, internal in the metal,—and, therefore, the city cannot be charged with carelessness in failing to discover such a defect. If I am wrong in that, you will get a new trial and another chance. I do not altogether agree with Mr. Ryan on the law on the other point so I shall dispose of it on this point."

Subsequently the court entered an order refusing to take off the nonsuit. Plaintiff appealed.

*Error assigned* was order, quoting record.

*Wm. M. Stewart, Jr.,* with him *Ballard, Spahr, Andrews & Madeira,* for appellant.—The question of the negligent construction, inspection, maintenance and repair of the water main should have been submitted to a jury: Elder v. Coal Co., 157 Pa. 490; Herron v. Pittsburgh, 204 Pa. 509.

The rule of law exempting a municipality from liability for the consequences of a negligent act of an employee actively engaged in the performance of a governmental function does not apply where the alleged negligence consists of a failure to properly construct, inspect, maintain and repair a plant created for the sole use of its fire department: Scibilia v. Phila., 279 Pa. 549; Kies v. Erie, 169 Pa. 598; Johnson v. Phila., 236 Pa. 516; Herron v. Pittsburgh, 204 Pa. 509; Briegel v. Phila., 135 Pa. 451.

*James Francis Ryan,* Assistant City Solicitor, with him *Joseph P. Gaffney,* City Solicitor, for appellee, cited on the question of negligence: Titus v. R. R., 136 Pa.

618; Diver v. Singer Mfg. Co., 205 Pa. 170; Zimmer v. Phila., 57 Pa. Superior Ct. 20.

Even if there was negligence, defendant is not liable, as a governmental function alone was performed.

OPINION BY MR. JUSTICE SADLER, January 26, 1925:

In 1901, the City of Philadelphia constructed a high-pressure main for fire purposes, placing the same in part on Walnut Street. It was not connected in any way with the pipes supplying water for ordinary uses. As originally built, it was under the sidewalk in front of the property now occupied by the Ritz Carlton Hotel Company, plaintiff here, but, in 1914, was removed to the north of the curb line, extending to Broad Street, so that the space formerly used might be included in the basements of the new building. The pipe was laid in newly made ground adjoining the north wall, and, where the fracture later occurred, passed through the manhole of another corporation. Breaks along the line, at different points, had been discovered on several occasions, and, in December of 1921, trouble developed at the place now in question. Repair was promptly made in the usual manner by attaching a cast-iron sleeve, which was firmly fastened and caulked. Tests at high pressure indicated the work was satisfactorily completed. During the following eighteen months leakage occurred where the line passed through the opening, and examination led to the belief that it was caused by a small sand hole in the pipe. The water accumulating, not exceeding in depth six inches, was removed three times, but no such defect was apparent as was believed to make necessary the removal of the pipe, since such minor fault may be corrected by the action of the sediment passing through. Regular inspection was had of the entire system, and any observable dangers promptly rectified.

The lines were put in service on June 11, 1923, as a result of a serious conflagration in the center of the city, and the pressure was increased considerably, though

to a less degree than had been applied when the pipe was tested after the repair in January of 1922. The sleeve in place broke, and water entered the basement of the hotel, causing damage to the machinery and personal property there stored. This suit was brought to recover for the loss sustained, and the real contest was as to the legal liability of the defendant to pay any sum, the amount of the claim not being a matter of serious dispute. The learned court below entered a compulsory nonsuit on the ground that the break was the result of a latent defect in the iron sleeve used in making the repairs, and was of a character such as could not be discovered by any reasonable inspection. From the refusal to take off the nonsuit, this appeal was entered.

The testimony disclosed the pipe properly laid in 1914, and, though on newly made ground, yet it was not claimed that the break, which occurred in a concrete manhole, was the result of this. Regular and usual inspections of the pipes were made, and any defects disclosed, as at times appeared at different places, were promptly repaired. A fracture was found in 1922 at the point involved, and, to correct it, the proper mechanical devices were resorted to by fastening the cast-iron sleeve. This material was purchased from a reputable manufacturer, and had been tested at a pressure very largely in excess of that exerted by the flow of water in the pipe, which had been subjected to a greater strain, when the repair was completed, than it bore at the time of the accident. It is true, as already noticed, a small leak from a sand hole had been discovered later, but it was not of a serious nature, and did not contribute to the final break. The real cause was the splitting of the cast-iron sleeve lengthwise as a result of a flaw in the material, which was not apparent, and could not have been found by any reasonable test.

Under such circumstances, the court properly refused to permit a recovery. There was no evidence from which

the jury could find that the defect was observable (Case v. Lehigh C. & N. Co., 248 Pa. 598), or discoverable, had proper inspection been made (Herron v. Pittsburgh, 204 Pa. 509); in either of which event a recovery could be had, if the right depended solely on proof of negligence. Here, the defect was latent, and a reasonable examination, such as was given, did not disclose it. No verdict for the plaintiff was therefore permissible: Travers v. Delaware County, 280 Pa. 335; Murdaugh v. Oxford Borough, 214 Pa. 384; Childs v. County of Crawford, 176 Pa. 139; Sack v. Ralston, 220 Pa. 216. "The unbending test of negligence in methods, machinery and appliances, is the ordinary usage of the business": Titus v. Bradford, etc., R. Co., 136 Pa. 618. There is nothing in this case to show a failure to adopt reasonable precautions to prevent breaks in the pipe, or, when repairs were made, that other than approved means were adopted to secure renewed safety. It did not appear that the discovery of the small leak, supposedly from a sand hole, would lead an inspector to the belief that a new line of sleeve was required, or that a failure to so find indicated a lack of exercise of proper care. Because the accident might have been prevented by adopting some special method or device, when such is not commonly done by reasonably prudent persons under similar circumstances, does not prove negligence: Kilbride v. Carbon, etc., Co., 201 Pa. 552. There was nothing to indicate that the sleeve, which gave way and caused the injury, was defective or improperly attached. The hidden and undiscovered flaw in the iron caused the break, and, for the consequences, the defendant cannot be held liable here.

The conclusion reached makes unnecessary any discussion of the right to recover from the city, if negligence had been proven, it being claimed that, in maintaining the fire-line entirely disconnected from the general water service, a governmental function alone is performed, and the municipality, therefore, is immune from liabil-

ity. The ruling below was justified for the reason assigned by the trial court. It follows the only assignment of error must be overruled.

The judgment is affirmed.