[Civ. No. 4233. Third Appellate District.—January 26, 1931.]

BUFFUMS' (a Corporation), Respondent, v. CITY OF LONG BEACH (a Municipal Corporation), Appellant.

Nowland M. Reid, City Attorney, and George W. Trammel, Jr., Deputy City Attorney, for Appellant.

Denio, Hart, Taubman and Simpson for Respondent.

MR. JUSTICE Pro Tem. JAMISON Delivered the Opinion of the Court.—This is an action for damages caused by the breaking of appellant's water main, thereby flooding the basement of respondent's building and causing

loss and injury to said building and to the property of respondent contained therein.

Briefly stated, the facts are as follows: During the years 1923 and 1924 appellant was supplying water to the City of Long Beach, and for that purpose was maintaining an eight-inch water main in the alley in the rear of respondent's building, through which it distributed water to its consumers. On the 27th of April, 1924, there was a breach in said water main from which a large volume of water found its way into respondent's building causing damage to the basement of said building and to the property contained therein. Some time prior to the break, a connection had been made with the main in said alley at a point behind respondent's building and it was at this place that the break occurred.

Appellant admitted by its answer that it had the management and control of the said main and caused to flow through it a great quantity of water under high pressure.

At the trial of the case respondent produced proof of the breaking of the main and the resultant flooding of its building and damage to its property therefrom and that a break of this character does not occur in the usual course of things, if those having the management thereof, use proper care, and upon this proof rested its case. Appellant then moved the court to grant a nonsuit upon the ground that respondent had not made out a case, that it had failed to show that appellant was negligent, but, upon the contrary, had shown that respondent was guilty of contributory negligence. The motion was denied by the court and appellant then produced evidence tending to show absence of negligence on its part and contributory negligence upon the part of respondent. Thereupon respondent produced evidence in rebuttal tending to prove affirmative negligence on the part of appellant.

The appellant claims that the court erred in denying its motion for a nonsuit, for the reason that, when respondent rested its case, the only evidence of appellant's negligence was the presumption of negligence arising from the doctrine of *res ipsa loquitur*, and that the facts proven in this case in nowise warranted the application of this doctrine.

R. L. Wentz testified that he examined the building and premises of respondent the morning after its flooding and

found that the water which entered the building came from a break in this main.

Clark H. Shaw, appellant's chief engineer of its water department, testified that there was an eight-inch main, owned and managed by appellant, located in the alley in question, and that in his opinion a water main of the kind and character of this would not, with proper care and management, in the ordinary course of events, break or burst. In a recent case decided by our Supreme Court, that of *Michener* v. *Hutton*, 203 Cal. 604 [59 A. L. R. 480, 265 Pac. 238, 239], the court said: "The courts of this state have long since adopted the rule as expressed in 1 Shearman & Redfield on Negligence, sixth edition, page 132, viz.: 'Where the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of proper care,' " citing *O'Connor* v. *Mennie*, 169 Cal. 217, 223 [146 Pac. 674], and many other decisions of the Supreme Court. In the case of *Esberg-Gunst Cigar Co.* v. *City of Portland*, 34 Or. 282 [75 Am. St. Rep. 651, 43 L. R. A. 435, 55 Pac. 961], cited by respondent in its brief, the facts are similar to those in the instant case. That was an action for damages caused by the bursting of a water main belonging to the city of Portland and managed and controlled by it. The court held that it being shown that the main was under the management of the city and that the accident is such as, in the ordinary course of things, does not happen, if those who have the management, use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from a want of care.

In the case now under consideration the things which contributed to the accident, that is to say, the water which entered respondent's building and the main which broke, permitting water to escape therefrom, were both managed and controlled by appellant.

Appellant's chief engineer, who by reason of his official duties, was familiar with this main and its construction, testified that, in the ordinary course of things, the main

would not have burst, if those having management of it used proper care.

We are of the opinion that the evidence produced by respondent established a *prima facie* case and that the trial court did not err in denying the motion for a nonsuit.

■ Appellant next contends that the evidence shows that the accident was entirely owing to the negligence of respondent. During the year 1923 respondent had a building under construction which adjoined its old building and which abutted upon the alley in which the said main was located, said main being about five feet from the west wall of said building. Appellant produced testimony to the effect that in preparing the foundation and basement for the said building, respondent made an excavation, some forty feet in depth, that said excavation caused a part of the alley in which the main was located to cave in, leaving the main without support and that by reason thereof, the weight of the main caused it to sag down and that this sagging produced the break and consequent flooding of respondent's building.

The evidence shows that a connection was made with the main, according to appellant's witnesses in October, 1923, but respondents' witnesses testified it was done about two months preceding the break, and that at the point where this connection was made the break occurred, and that this connection was made by the insertion of a "T" pipe in the main, that in inserting a "T" pipe in a main it is necessary to cut the main at a joint and place the "T" in the cut place, caulking one end of the "T" into the main, the other end being made a part of the main by placing a sleeve over the cut end of the main and the end of the "T" and caulking it in. This sleeve was about sixteen inches in length and was cast iron and was cut from a piece of pipe with a cold chisel and sledge. This connection was made at a point in the alley opposite the south corner of the old building and at the north corner of the new building and was made for the purpose of conducting water into the new building.

Respondent produced evidence to the effect that, for the purpose of installing this connection, the employees of appellant dug a ditch ten feet long, four feet wide and two feet below the main, that the ground where this ditch was dug was solid and that when the ditch was filled, the dirt

was thrown back loosely and was not tamped down under the main and rendered solid so as to furnish support for the main and the leakage from the main softened the loose earth underneath the main and caused it to sag and break, that a main with a sleeve is stronger than the joints in a main unless the sleeve is defective, and that a sagging pipe will pull out at the joint before the sleeve will give way, if the sleeve is properly made, that only a practiced workman can cut a sleeve without cracking it, that there were five joints exposed when this break occurred and none of them had pulled out.

There is no evidence indicating which one of appellant's employees cut this sleeve, but the foreman, who superintended the putting in of the sleeve, testified that it was not defective or cracked. A piece of the sleeve was seen by one of appellant's employees after the accident and he testified that it split lengthwise.

On rebuttal, R. L. Wertz—a witness for respondent—the superintendent of construction of respondent's building, testified that he had full charge of the work done in the construction of the building, that when the excavation for the foundation and basement reached a depth of eighteen or twenty feet, a sluffing off of the ground next to the alley took place, that this sluffing extended over a distance of twenty-five or thirty feet, extended into the alley from a minimum distance to three and one-half feet, that he immediately shored up the alley where the sluffing occurred and then back-filled to keep the alignment intact. This witness further testified that the cause of the sluffing of the dirt from the alley resulted from moist condition of the ground produced by leaks from the main. When the wall of the building next to the alley was completed, the shoring was removed and the space where the sluf had taken place was back-filled and tamped so that the surface of that part which was back-filled was slightly above other portions of the surface of the alley, that this back-filling was done more than a year before the break in the main.

There was evidence on the part of respondent that on several occasions appellant was notified that its said main was leaking and at said times it had its employees repair the main.

The court found in substance that the main leaked and caused the soil to become soft and left the main without support so that it sagged and settled, and by reason thereof, broke and permitted water therefrom to escape to respondent's damage, that appellant had full knowledge of the dangerous condition of said main, and having such knowledge, permitted it to remain in that condition until the break occurred, that the appellant was guilty of negligence in using defective material and making the connection and in failing to properly repair and support the main and that this negligence was the proximate cause of the breaking of the main and that the respondent was not guilty of negligence.

Respondent's proof that the breaking of the main was caused under circumstances which raised the presumption of negligence on the part of appellant, can only be counteracted by proof on the part of appellant that it in nowise had been guilty of negligence. This the appellant endeavored to do, by proof that the break was caused by the removal of the supporting earth from the main in making the excavation for respondent's building.

In refutation of this evidence the respondent, in rebuttal, produced evidence to the effect that more than one year before the break it had replaced and tamped the earth which had broken away from the alley at the time of the excavation and that the withdrawal of the supporting earth from the main was done by appellant's employees in making repairs on said main and repairing leaks therein.

In this connection, it was said by the Supreme Court in *Michener* v. *Hutton*, 203 Cal. 604 [59 A. L. R. 480, 265 Pac. 238, 240], that, "It is for the jury, or for the court when sitting without a jury, to determine from all the evidence in the case whether the defendant has successfully met and rebutted the *prima facie* case made out by the plaintiff in an action wherein the mere proof of the happening of the accident and the circumstances surrounding it give rise to an inference of negligence. That the inference of negligence created by the application of the doctrine of *res ipsa loquitur* constitutes evidence which may not be disregarded by the jury, but is to be weighed and considered as against the evidence adduced by the defendant in rebuttal thereof, has been announced in numerous cases." Further along in this same decision the Supreme Court quotes with approval the

following words used in the opinion rendered in the case of *Travers* v. *Murray*, 87 App. Div. 552 [84 N. Y. Supp. 558], where, after stating that the mere fall of a chimney was sufficient to give rise to an inference of negligence, the court held such inference "alone is enough to sustain the verdict, even in the face of the attempted explanation on the part of the defendant".

The respondent, in the case now under consideration, having established a *prima facie* case of negligence on the part of appellant, it then became the duty of the appellant to rebut that presumption by evidence showing that it exercised the requisite degree of care and that it was not negligent. There is a decided conflict between the evidence produced by the appellant to the effect that the break in the main was without its fault and the rebutting evidence of respondent to the contrary. There is substantial evidence that it was due to the negligence of appellant that the main broke. Such being the case, the findings of the court cannot be disturbed. (2 Cal. Jur. 921.)

Appellant devotes considerable space of his rather voluminous brief to a discussion of the relative rights of coterminous land owners.

In view of the decision we have reached, we think it unnecessary to give consideration to those matters.

The judgment is affirmed.