A. J. BROWN & SON, INC., v. CITY OF GRAND RAPIDS.

1. Negligence—Res Ipsa Loquitur.
   Doctrine of *res ipsa loquitur* does not prevail in this State.

2. Same—Presumption—Burden of Proof.
   Burden of proof remains with plaintiff as mere occurrence of accident ordinarily raises no presumption of negligence.

3. Same—Water System—Evidence.
   Merchant whose seeds stored in basement of store were damaged because of break in lateral near large water main *held*, not to have proved failure to use proper materials or reasonable care as to installation or maintenance so as to impose liability upon municipality or owner or lessee of store.

4. Municipal Corporations—Water System.
   Municipality is not insurer of its water system but is required to use reasonable care in establishment and maintenance of system.

5. Negligence—Water System—Notice of Defect.
   Actual notice of defective condition of water system, either by reason of knowledge of break at point of damage or like occurrences in immediate vicinity, is prerequisite to finding of negligence of owner of system.

6. Appeal and Error—Water System—Evidence of Defects.
   Although court erroneously confined inquiry to the particular lateral of municipal water system of which broken elbow was a part, it was not so prejudicial as to call for a new trial where there was testimony that there had been no breaks in immediate vicinity and lateral was otherwise in good condition.
   Weadock and Sharpe, JJ., dissenting.

Appeal from Superior Court of Grand Rapids; Taylor (Thaddeus B.), J. Submitted October 19, 1933. (Docket No. 117, Calendar No. 37,405.) Decided December 19, 1933.

Case by A. J. Brown & Son, Inc., a Michigan corporation, against City of Grand Rapids, a municipal corporation, and others for damages caused by a broken water pipe. Judgment for defendants. Plaintiff appeals. Affirmed.

*Norris, McPherson, Harrington & Waer* (*Annis & Heaney,* of counsel), for plaintiff.

*Robert S. Tubbs,* for defendant City of Grand Rapids.

*Travis, Merrick, Johnson & McCobb,* for defendant George L. Young Company.

BUTZEL, J. The judgment for defendants should be affirmed.

The testimony shows that in the year 1894 a new lateral water main on Ionia avenue, in the city of Grand Rapids, Michigan, was connected with a large main owned and operated by the Grand Rapids Hydraulic Company, with the object of supplying water to the building thereafter acquired by defendant George L. Young Company and occupied by defendant Bishop Furniture Company. The evidence revealed that no change whatsoever has ever been made in the pipes or elbows of the lateral main since their installation. The city of Grand Rapids acquired the plant and equipment of the Grand Rapids Hydraulic Company in 1920 and continued to supply water to residents of the city for compensation.

In the early morning hours of July 3, 1927, a break occurred in an elbow of the lateral main, situated about 4½ feet below the surface of the ground and about a foot from a point immediately below the west rail of the street car tracks laid in the street. As a result of the break, a large flow of

water passed through the basement of defendant George L. Young Company and eventually lodged in the basement of plaintiff's premises, causing serious damage to a large stock of seeds stored there.

The water was shut off almost immediately after the break was discovered. Shortly thereafter; when repairs were made, the lateral was found to be in good condition and, with the exception of a short piece removed in order to make a new connection at the point of breaking, the entire section remained in use for four years, after which time new developments made its replacement advisable. When the repairs were made, a part of the broken elbow was taken to the city hall and carefully inspected by several who later appeared as witnesses. Since that time, it appears to have been lost and was not produced at the hearing. The other part of the broken elbow was lost when the break was uncovered. The elbow had been split by a lengthwise fracture which, except as to an extremely small, dark spot on the under side, appeared to be fresh. The record discloses that this spot could not have been discovered unless excavations had been made under the elbow and that, even under such a procedure, a very minute examination would have been required to reveal the condition.

No satisfactory explanation has been given as to the exact cause of the break. Defendant introduced testimony in an effort to prove that it was the result of electrolysis, but the record leaves us very much in doubt. The testimony of witnesses with regard to the appearance of the section of the elbow taken to the city hall indicated that the break might have been caused in some other manner. It is possible that it might have been brought about by the constant vibration of street cars passing over the tracks

almost immediately above the elbow, by acids or other chemicals in the ground, or by some sand bubbles or other defect in the pipe that did not cause damage until almost 35 years after the lateral was first laid. There is insufficient testimony in the record, however, to justify a holding that any one or more of these possibilities were actualities.

It was testified that pipes of this character might last almost a century. Electrolysis in a pipe is usually shown by a pitted condition, which was not in evidence on the fragment of the elbow found after the break. The effect of electrolysis on a pipe is directly opposite to that of electroplating. It removes the metal from cast iron, leaving only carbon. In order to ascertain whether a pipe has been subjected to electrolysis, a knife or other sharp instrument is frequently used to cut into the pipe. If there is no resistance, it is a proper conclusion that electrolysis has eaten away the iron, leaving only the soft carbon.

There was no showing that the pipe was subject to any unusual water pressure, other than the introduction of a city official's statement to the effect that there had been some increase in pressure, the exact extent of which was not described, after the city took over the Hydraulic Company's plant. One witness stated that new installations are tested by a severe water pressure of 160 pounds. There is no showing on the record as to the practicability of such a procedure when applied to an entire water system and its advisability was severely criticized by appellees in the briefs.

Notwithstanding some confusion on the subject in the earlier cases, it has been definitely determined by this court that the doctrine of *res ipsa loquitur* does not prevail in this State. *Camp* v. *Spring,* 241

Mich. 700. The mere occurrence of an accident ordinarily raises no presumption of negligence; the burden of proof remains with plaintiff and does not shift. *Weaver* v. *Motor Transit Management Co.,* 252 Mich. 64; *Kerr* v. *City of Detroit,* 255 Mich. 446.

Plaintiff has failed to prove that defendant city of Grand Rapids was in any way negligent in omitting to perform a duty. Neither has it fixed responsibility upon defendants George L. Young & Company, the owner of the property, and Bishop Furniture Company, its lessee. With the pipes already in service for almost 35 years, there can be no claim that they were improperly installed, nor is there any claim that improper materials were used.

Plaintiff falls back upon the contention that there were no proper tests or inspections conducted by the city, but suggests no reasonable tests or methods of inspection. The testimony reveals with certainty that there were no similar breaks in the near vicinity. If it was incumbent upon the city to make such tests and inspections as are demanded by plaintiff, at places where there had been no previous trouble, it would mean that the city would constantly be obliged to dig up its streets and inspect its water mains. The further question arises as to how frequently, in that eventuality, such inspection should be made. If the city should apply the knife test to all of its mains after they were exposed by excavations, and a leak should occur shortly thereafter as a result of electrolysis, would the city be responsible for improper inspection? The expense of maintaining a system under those circumstances would be such as to make the cost of supplying water almost prohibitive.

While there are cases in some jurisdictions which hold the city liable for breaks in water mains without making it incumbent upon the plaintiff to show the cause thereof, an examination discloses that most of them have been decided in jurisdictions in which the doctrine of *res ipsa loquitur* prevails. We believe that the correct rule is stated in *Simon* v. *City of New York,* 82 Misc. Rep. 454 (143 N. Y. Supp. 1097), (quoted in 6 McQuillin, Municipal Corporations [2d Ed.], § 2852):

"In all the sewer or water main cases cited by the plaintiff, in which the city was held liable, there was either evidence of actual neglect in the construction or operation of the water main or sewer, or notice to the city authorities of the break or overflow, accompanied by neglect on their part to repair promptly, or actual notice, by reason of like prior occurrences, that the sewer or pipe were defectively maintained. * * * A municipality is not an insurer of its water or sewer system, any more than of its streets. It is required only to use reasonable care in establishing and maintaining such a system."

See, also, *Jenney* v. *City of Brooklyn,* 120 N. Y. 164 (24 N. E. 274); *Philadelphia Ritz Carlton Co.* v. *City of Philadelphia,* 282 Pa. 301 (127 Atl. 843); *Schindler* v. *Standard Oil Co. of Indiana,* 207 Mo. App. 190 (232 S. W. 735).

Actual notice of a defective condition, either by reason of knowledge of a break or overflow at the point of damage, or by reason of like occurrences, is a prerequisite to a finding of negligence. Plaintiff claims the lower court's ruling blocked proof of the existence of similar defects in the old hydraulic system. The court sustained objections to questions asked with regard to the occurrence of leaks on streets other than the one under which the water

main was located in the instant case, and limited the questions to the one particular lateral of which the broken elbow was a part. The court was in error in thus restricting the examination. Had counsel localized his questions so as to inquire only as to breaks, if any, at points near the premises in question, we would order a new trial. Inasmuch, however, as the witnesses testified that there had been no breaks in the immediate vicinity, and that the lateral itself was found to be in good condition except at the point of breaking, we do not believe the error was so prejudicial as to call for a new trial.

The judgment of the lower court is affirmed, with costs to appellees.

McDONALD, C. J., and POTTER, NORTH, FEAD, and WIEST, JJ., concurred with BUTZEL, J.

WEADOCK, J. (*dissenting*). This is an appeal from the superior court of Grand Rapids which heard the case without a jury and rendered judgment for the city of Grand Rapids and two other defendants and against plaintiff, a merchant who incurred damages to the agreed amount of $3,494.95 to its stock of seeds in the basement of its store caused by water from a bursted pipe of the Grand Rapids waterworks, a municipally-owned water system conducted for gain, and the successor of the Grand Rapids Hydraulic Company, a private corporation, which built the main about thirty-three years ago when Grand Rapids was smaller than it is now, a city of 168,592, according to the United States census of 1930.

Furnishing water for profit is not a governmental function but a business conducted for profit.

By the charter of Grand Rapids, 1916, as amended, the city manager shall have "charge of and supervise the construction, maintenance and repair of waterworks property and service." Section 95, subd. (d).

An accident is an event which under the circumstances is unusual and unexpected by the person to whom it happens, but it happens in obedience to physical laws.

Negligence may be presumed from the happening of an accident which in the ordinary course of things would not have happened without negligence.

The flooding of plaintiff's store basement could not have happened without someone's negligence.

Either the old service pipes of the Hydraulic Company laid to supply a small town with water were weakened after 33 years service as shown by the partial break indicated by the defect found at the break, or the pressure was too great, causing the old pipe to break and cause the damage complained of. The city had neglected inspection ever since it acquired the hydraulic plant and it offered no proof of inspection or examination when it purchased the plant.

As this court said in *Barnowsky* v. *Helson*, 89 Mich. 523, 525 (15 L. R. A. 33):

"If the wall of a building falls down, and injures a person walking along the street or standing beside the building, the clear presumption is that the building was either negligently built, or that it was not kept in a reasonably safe condition after it was erected, since buildings properly constructed do not ordinarily fall of their own weight." Followed in *Gerstler* v. *Weinberg*, 160 Mich. 267,

In *LaFernier* v. *Soo River Lighter & Wrecking Co.,* 129 Mich. 596, at page 607, this court said of a vessel:

"Upon her first voyage  *  *  *  only two-thirds loaded, in smooth water and a comparatively light wind, she sank."

Her captain knew of no reason why she sank. The court said she was unseaworthy.

In *Gerlach* v. *Railway,* 171 Mich. 474, 484, Justice Brooke, in rendering the opinion of the court, said:

"The plaintiff's case was predicated, not only upon the fact that the handhold pulled out and the accident happened, but upon evidence that the wood underneath the lugs was decayed to such an extent that the screws drew out, and upon further evidence that the appearance of the wood immediately outside the lugs was such as might reasonably lead a careful and prudent inspector to suspect the existence of decay in the timber," citing Michigan cases.

This court has held that the bare occurrence of an accident is not evidence of negligence sufficient to take the case to the jury.

In this case there was evidence of the defect in the pipe and the question of electrolysis as well as the occurrence of the accident.

In *Burghardt* v. *Railway,* 206 Mich. 545 (5 A. L. R. 1333), this court held that "negligence may be established by circumstantial evidence and that where the circumstances are such as to take the case out of the realm of conjecture and within the field of legitimate inferences from established facts that at least a *prima facie* case is made," citing *Alpern* v. *Churchill,* 53 Mich. 607, and other cases. This case

was cited and followed in *Bacon* v. *Snashall,* 238 Mich. 457.

The true rule seems to be that the occurrence with its accompanying circumstances is such as to warrant the inference that it was the result of causal negligence.

In *Kaemmerling* v. *Athletic Mining & Smelting Co.* (C. C. of A., 8th Circuit), 2 Fed. (2d) 574, on page 583, it is said:

"In all well-considered cases the duty of explaining an accident which, with its attendant circumstances, makes out a *prima facie* case of negligence, is placed upon the defendant. * * * The same thought is suggested in *Sweeney* v. *Erving,* 228 U. S. 233 (33 Sup. Ct. 416, Ann. Cas. 1914D, 905)."

In the *Sweeney Case, supra,* on page 239, Justice Pitney, giving the opinion of the court, said:

"Plaintiff's insistence was not merely that the evidence of the occurrence of the injury under the circumstances was evidential of negligence on defendant's part, so as to make it incumbent upon him to present his proofs; the contention was that it made it necessary for him to prove by a preponderance of the evidence that there was an absence of negligence on his part."

That was necessarily so. The defendants did put in evidence in this case.

The judgment should be reversed, with costs to plaintiff, and a new trial granted.

Sharpe, J., concurred with Weadock, J.