REPUBLIC LIGHT & FURNITURE CO., APPELLEE, *v.* CITY OF CINCINNATI, APPELLANT.

(No. 7834—Decided April 26, 1954.)

*Mr. Jerome Goldman, Mr. John A. Benjamin* and *Mr. Julian Rubin,* for appellee.

*Mr. Henry M. Bruestle,* city solicitor, *Mr. Maurice W. Jacobs* and *Mr. Wallace M. Power,* for appellant.

Ross, J. A motion to dismiss this appeal on questions of law has been filed, with an alternate motion to affirm the judgment below. The ground stated in these motions is that "there has been no appealable order in this case in the court below."

From the record it appears that the trial to a jury resulted in a verdict for the defendant. At the conclusion of all the evidence, a motion for an instructed verdict was filed by the defendant and overruled. The plaintiff, after entry of judgment for defendant, filed a motion for a new trial, which was granted and the judgment entered on the verdict was vacated. Defendant filed an appeal on questions of law from the granting of the motion for new trial and vacating the judgment in its favor and from the action of the trial court in overruling defendant's motion for an instructed verdict.

It is the claim of the plaintiff that there was no abuse of discretion in granting the motion for new trial, and, hence, such action of the trial court did not constitute a final order. This contention will be sustained. No abuse of discretion appears in the action of the trial court.

The contention of plaintiff is that the action of the trial court in overruling defendant's motion for an instructed verdict was never journalized, and, hence, under the provisions of Section 2505.07, Revised Code, amended effective October 27, 1953, there is no appealable order.

Counsel for plaintiff misconstrue the effect of this section, which, *inter alia*, provides "after the journal entry of a final order" etc., an appeal may be perfected within certain periods. The effect of the contention of counsel for plaintiff is to read into the statute the word, "only." Since the cases of *Davis* v. *Turner,* 69 Ohio St., 101, 68 N. E., 819, and *Hurt* v. *Charles*

*J. Rogers Transportation Co.,* 160 Ohio St., 70, 74, 113 N. E. (2d), 489, the overruling of a motion for an instructed verdict has been held to be a final order.

Counsel for plaintiff claim also that the first paragraph of the syllabus in *Hurt* v. *Charles J. Rogers Transportation Co., supra,* also sustains their contention. Again, the statement is in the affirmative of a right, but does not negate the rule that the action of the trial court in overruling a motion for instructed verdict is a final appealable order, after the action of the trial court vacating a judgment on the verdict and granting a new trial is entered on its journal. A reading of the opinion will sustain this statement.

Under the state of this record, the court has spoken through its journal. It has spread an entry on the journal in which it vacated the judgment in favor of the defendant and granted plaintiff a new trial.

The final order was the refusal to grant the defendant's motion and qualifies under the definition in Section 2505.02, Revised Code.

Section 2505.07, Revised Code, amended effective October 27, 1953, is a statute fixing the *times* for filing notices of appeal, and as applied to the instant appeal requires that the notice of appeal from the adverse action of the trial court, constituting a final order, shall be filed within 20 days from the journalized entry of the trial court, vacating the judgment on the verdict in favor of the defendant and granting the plaintiff's motion for a new trial, which was done.

The motion to dismiss the appeal is overruled.

The character of defendant's appeal requires an examination of the entire record to determine whether there was any substantial evidence to sustain the plaintiff's cause of action alleged in the petition.

The action is predicated upon a break in a water main under a thoroughfare in the city of Cincinnati,

which, it is alleged, was the proximate cause of damage to plaintiff's goods stored in a cellar, which was partially flooded by water from the broken main.

The plaintiff alleged in his second amended petition the following specifications of negligence:

1. That the defendant "kept water pressure in said main greater than said main was designed or installed to carry."

2. That "defendant failed to make a reasonable inspection of said main to determine its condition, although said water main had been installed more than fifty years prior to December 1949," the time when it broke.

3. "In that defendant failed to replace or repair said main, although it knew, or should have known, that it had become corroded and in a weakened condition."

4. "In that defendant failed to have sufficient detecting and warning devices to give notice of the weakened condition of said main."

5. That after defendant knew of the break in the main and had workmen on the scene, it failed to pump the water from plaintiff's basement.

6. That defendant failed to notify plaintiff of the break and that water was running into plaintiff's basement.

The plaintiff was under the burden of proving that one or more of these allegations of negligence was the proximate cause of his alleged damage.

Negligence may not be presumed merely from proof of injury to plaintiff's property caused by some act of the defendant. The burden is upon the plaintiff to prove by a preponderance of the evidence that the defendant failed to exercise the care which a reasonably prudent person is accustomed to exercise under the same or similar circumstances; and in this case

the care which reasonably prudent operators of water-works are accustomed to use under circumstances similar to those existing in the instant situation (29 Ohio Jurisprudence, 650, 651, Negligence, Sections 165, 166). Where the standard of care is not of such a character as to be a matter of common knowledge to a jury, the burden rests upon the plaintiff to introduce substantial evidence from which a jury may reasonably infer the standard of care appropriate to the situation developed by the evidence. *Englehardt, a Minor,* v. *Philipps,* 136 Ohio St., 73, 23 N. E. (2d), 829.

Plaintiff alleged that the injury to his stock consisted of the soaking of cardboard cases, causing damage to their contents, consisting of furniture, appliances, electric lamps and shades.

The defendant answered, admitting the break in the main and notice thereof and denied the other allegations of the second amended petition. Defendant for a second defense, alleged that plaintiff was guilty of negligence contributing to the injury of his stock.

From the evidence, it appears that the plaintiff conducts the business of a retail furniture store, fronting on 418 Main Street, in the city of Cincinnati. The rear of the building abuts on Lawson Alley, and has a basement, which extends along such alley.

Shortly before three o'clock a. m. on December 17, 1949, the Cincinnati police department notified the Cincinnati water works department that water was flowing on the surface of Lawson Alley. In response to such notice, the employees of the city had cut off the water supply to the six-inch main imbedded in Lawson Alley within 15 minutes after receipt of the notice. Repeated efforts were immediately made to gain entrance to the locked and unattended premises of the plaintiff, but without effect.

Evidence was introduced by plaintiff showing that

the residence addresses of officers of plaintiff company were listed in the city directory.

Upon making an excavation in Lawson Alley, it was discovered that the six-inch cast iron pipe therein contained a small crack on the upper side. There was no water in the excavation. Two feet of the 12-foot section of the pipe were cut out and replaced by a new piece of pipe. The rest of the section of pipe was in perfect condition and had not been disturbed at the time of the trial. No further leakage occurred. The excavation was filled and the alley was opened to service within six hours after the leak was reported. Pumps, although available on trucks present while the repair of the main was being effected, were not used after access was obtained to plaintiff's premises, for the reason that only three inches of water stood in the basement of the premises and the pumps, owing to suction entrance in the hose being located three inches from the end would not pump the three-inch level of the water in the basement. Such water immediately ran down the drain in the basement when a pasteboard carton was removed from the drain. Employees of the city mopped up the remaining pools of water lying in depressions in the floor of the basement.

Although not germaine to the instant question (the right of the defendant to an instructed verdict), it appears that plaintiff would not permit removal of the cartons in the basement owing to inconvenience due to the Christmas sales, and considerable damage resulted to the contents of cartons stored in the basement due to capillary attraction. It is probable that such damage would not have occurred if the cartons had been placed where they could be dried. Also, it is clear that had the drain in the basement not been covered, no damage would have occurred.

From the evidence it appears that the six-inch water main in question was installed in 1894, and, like many other such mains, functioned without loss up to the time of trial, and that even the remaining 10 feet of the section repaired were in perfect condition and not replaced.

It appears also that there had been no change in the pressure carried in such main during the period from the time of its installation.

The main was of a type known as vertical cast iron, generally approved by those installing and maintaining water mains.

There is evidence that the failure of the affected portion of the section of the main was due to an erosion caused either by a "scouring" process due to movement of the adjacent soil, or to a species of electrolysis, caused by transient currents of electricity, originating from sources other than those controlled by the city. This latter cause removes any claim to the application of the doctrine of *res ipsa loquitur*.

There was evidence that breaks in the various mains in the city occurred to the extent of 250 to 300 a year. The evidence fails to show (even if controlling) that such breaks were in mains similar to the one herein involved, under similar pressure, of the same life, or in other ways identical in character with the main in question. It is questionable whether such evidence was even competent.

It is the claim of the plaintiff that there was substantial evidence indicating that inspection could have been made which would have prevented the loss for which plaintiff seeks recovery.

The attempt to prove such claim occupies a large part of the record. To review such evidence here would unduly extend this opinion. It is sufficient to say that after examining all the evidence submitted,

no substantial evidence appears justifying the conclusion that any feasible or reasonable method of inspection would have disclosed the imminence of a failure in the particular section of the main herein involved.

In addition, there was a complete failure in the attempt to show a standard of care employed by those situated similarly to the defendant. Proof of such standard of care is required. *Englehardt, a Minor,* v. *Philipps, supra.*

It is asserted that the rules set out in *Doud* v. *City of Cincinnati,* 152 Ohio St., 132, 87 N. E. (2d), 243, and *City of Portsmouth* v. *Mitchell Mfg. Co.,* 113 Ohio St., 250, 148 N. E., 846, 43 A. L. R., 961, are here applicable. It must be perfectly obvious that the feasibility of examining a sewer is quite different from that of inspecting a water main. The sewer is an open conduit. The main is a closed cast iron pipe, full of water, buried several feet under the surface of a paved street, upon which the adjacent property is dependent for continuous service, which, if cut off for any extended period of time, would cause great damage.

Again, the flow of a sewer can be observed, and any failure in its function may be ascertained by examination at manholes or exists. It is also comparatively easy to observe the presence of trash or other substance which may cause a failure in the sewer, if permitted to enter it. Such was the situation in *City of Portsmouth* v. *Mitchell, supra.*

No evidence was submitted from which it could be concluded that the city should have been put on notice of the prospect of possible failure of the water main here involved.

In *A. J. Brown & Sons, Inc.,* v. *City of Grand Rapids,* 265 Mich., 465, 469, 251 N. W., 561, it is stated:

"Plaintiff falls back upon the contention that there were no proper tests or inspections conducted by the city, but suggests no reasonable tests or methods of inspection. The testimony reveals with certainty that there were no similar breaks in the near vicinity. If it was incumbent upon the city to make such tests and inspections as are demanded by plaintiff, at places where there had been no previous trouble, it would mean that the city would constantly be obliged to dig up its streets and inspect its water mains. The further question arises as to how frequently, in that eventuality, such inspection should be made. If the city should apply the knife test to all of its mains after they were exposed by excavations, and a leak should occur shortly thereafter as a result of electrolysis, would the city be responsible for improper inspection? The expense of maintaining a system under those circumstances would be such as to make the cost of supplying water almost prohibitive."

The burden rests upon the plaintiff to show that its damage was the proximate result of the city's failure to inspect this particular main. It is not clear that had this main been exposed for inspection 10 days before the break that unless a most careful examination had been made of the exact spot where the leak occurred, the leak would have been prevented. Can it be that periodically (how often) the city is required to expose the miles of pipe employed and scrape or otherwise test each inch of each section of pipe, or, not doing so, be compelled to respond in damages for the result of a leak, the imminence of which it had not the slightest notice? Our answer is, that it is not so required.

There is no evidence that any number of cities, similar to the city of Cincinnati, employ any methods of inspection which would have disclosed the immi-

nence of a break such as occurred in the water main in question. See *Englehardt, a Minor, v. Philipps, supra.*

This court, in *Taphorn v. City of Cincinnati,* 96 Ohio App., 454, reached conclusions similar to those here entertained.

One of the specifications of negligence alleged by plaintiff is that the city failed to use proper care to prevent injury to plaintiff's property after the break in the main was discovered.

The flow of water in the main was shut off within 15 minutes after notice to the waterworks department of the break. Every effort was made immediately and during that period and thereafter to gain access to the premises of the plaintiff. It is asserted by plaintiff that the city should have had resort to the city directory and then called up an officer of the plaintiff company. In the first place there is no evidence that if this had been done in the time necessarily involved in such action, that no water would have reached the premises of plaintiff or that the damage suffered would not have occurred, and especially as plaintiff permitted a carton to remain over the drain in the basement and other cartons to remain untouched in the basement for a considerable period after the water in the basement had flowed out through the drain in the basement.

Nor can we bring ourselves to hold that there is a duty upon the city to employ such extraordinary methods of securing entrance to the securely locked and unattended premises of plaintiff where no method of gaining access to the premises was indicated thereon. There is no evidence that the city could have had more reason to anticipate a leak than had the plaintiff.

It is the conclusion of this court that there was sub-

mitted to the jury no substantial. evidence showing that the plaintiff had sustained any of its specifications of negligence constituting a proximate cause of its damage, and that, therefore, the motion of the defendant for an instructed verdict should have been sustained. This court, therefore, enters final judgment in favor of the defendant, which judgment the trial court should have rendered.

*Judgment accordingly.*

MATTHEWS, P. J., Ross and HILDEBRANT, JJ., concur in the syllabus, opinion and judgment.