**ADAM HAT STORES, Inc., Respondent,**

v.

**KANSAS CITY, Missouri, a Municipal Corporation, Appellant.**

No. 46704.

Supreme Court of Missouri,

En Banc.

Sept. 8, 1958.

Rehearing Denied Oct. 13, 1958.

Benj. M. Powers, City Counselor, John J. Cosgrove, Associate City Counselor, Robert A. Meyers, Asst. City Counselor, Kansas City, for appellant.

Homer A. Cope, Joseph H. Glass, Donald W. Browne, Walter A. Raymond, Kansas City, for respondent.

J. Weston Miller, Mayte Boylan Hardie, Miller, Fairman & Sanford, Springfield, Utilities Attorneys for the City of Springfield, Mo., amici curiæ.

HOLLINGSWORTH, Chief Justice.

█ Adam Hat Stores, Inc., hereinafter referred to as plaintiff, instituted this action in the Circuit Court of Jackson County to recover from Kansas City, hereinafter frequently referred to as "the city", the sum of $3,812.49 for damage by water to certain of its merchandise resulting from a break in the city's water main located in the public street in front of plaintiff's store in which the merchandise was kept. The cause was submitted to a jury under the res ipsa loquitur doctrine. The jury returned a verdict in favor of the city, but the trial court sustained plaintiff's motion for new trial on the ground of error in denying plaintiff's counsel the right to comment in argument on the fail-

ure of the city to call as witnesses two of its employees who were at the scene of the occurrence shortly after it was discovered. The city appealed to the Kansas City Court of Appeals, wherein it urged not only error in the aforesaid ruling of the trial court, but also that no submissible case of the city's negligence was made under the res ipsa loquitur doctrine. That court ruled both assignments against the city and affirmed the order of the trial court granting plaintiff a new trial. 307 S.W.2d 36. Upon application of the city, we ordered the cause transferred to this court, primarily because of the general interest and importance of the question of the application of the res ipsa doctrine to the bursting of an underground water main owned, operated and under the exclusive control of the city—a question which, concededly, has not heretofore been directly decided in any of the appellate courts of this State.

Neither the essential facts nor the rule of res ipsa loquitur as applied in Missouri is in dispute, but the question of the applicability of the rule to the facts is a close and vexing one, as is evidenced by conflicting decisions of the courts of other states, each of which, however, turns upon some fact (or lack of fact) situation not shown in the instant case or upon an interpretation of the res ipsa doctrine as applied in that state, or nonrecognition of the doctrine in its entirety as in Michigan.[1] No useful purpose can be served by an extended restatement of either the facts or the rule of res ipsa as applied in Missouri; those have been well stated in the opinion of the Kansas City Court of

1. Holding the rule of res ipsa loquitur applicable are: Esberg-Gunst Cigar Co. v. City of Portland, 1899, 34 Or. 282, 55 P. 961, 43 L.R.A. 435; Buffums' v. City of Long Beach, 1931, 111 Cal.App. 327, 295 P. 540; George Foltis, Inc., v. City of New York, 1940, 174 Misc. 967, 21 N.Y.S.2d 800; Same case, 1941, 287 N.Y. 108, 38 N.E.2d 455, 153 A.L.R. 1122; Kind v. City of Seattle, 1957, 50 Wash. 2d 485, 312 P.2d 811.

Holding the rule not applicable are: Philadelphia Ritz Carlton Co. v. City of Philadelphia, 1925, 282 Pa. 301, 127 A. 843; Goldman v. City of Boston, 1931, 274 Mass. 329, 174 N.E. 686; A. J. Brown & Son, Inc., v. City of Grand Rapids, 1933, 265 Mich. 465, 251 N.W. 561 (expressly stating that the res ipsa doctrine is not recognized in Michigan); Republic Light & Furniture Co. v. City of Cincinnati, 1954, 97 Ohio App. 532, 127 N.E.2d 767.

Appeals, to which reference is made. Consequently, we shall briefly state the essential facts and direct our attention to the applicability of the doctrine, as challenged in a supplemental brief filed by the city and a brief filed by the City of Springfield as amicus curiae.

The city owns, operates and exercises exclusive and complete control over the installation and maintenance of its waterworks system. On August 31, 1953, one of its 6-inch cast-iron mains, laid approximately four feet below the surface of the street at some time prior to 1900, split open at a point between the control valve in the middle of 12th Street and the hydrant at the south curb in front of plaintiff's store, from which water flowed into the basement of the store and caused the damage for which plaintiff sought to recover. Neither the city nor the plaintiff knew the cause of the break. The main normally carried a water pressure of 97 to 100 pounds. The city offered no evidence as to the condition or age of the pipe when laid nor the manner or care with which it was placed in the ground or was thereafter maintained.

An expert, testifying in behalf of the city, stated: Ninety per cent of all municipal water mains are made of cast iron, which has a minimum duration expectancy of 100 years or more, and some are known to have been in service for more than 300 years. Following installation, there is no method of inspection other than to take the piping out of the ground. Engineers never recommend its replacement because of age. Corrosion is seldom a problem. Cast-iron water mains break because of (1) excessive internal water pressure, (2) excessive impact from traffic over the surface of the street to the outside of the pipe, (3) settlement of soils and (4) electrolysis. It was his opinion that the break was not due to internal pressure or excessive impact from traffic or to electrolysis (seepage of electric current from streetcar tracks). It was his further opinion that the pipe could have broken because of uneven settlement of the soils, but he was unable to reach any conclusion as to the cause.

In its supplemental brief, the city says that its water mains are maintained for the benefit of all of the people and that it is prohibited by its charter from charging more than is necessary to pay the cost of delivery, upkeep and maintenance. Actually, however, the city admitted in answer to interrogatories filed and admitted in evidence that its waterworks system was operated "for revenue and profit." But, be that as it may, whenever a city in its proprietary capacity operates a waterworks system for the purpose of supplying water to individuals, as is admitted in the instant case, it must assume the same responsibility for its negligence as any other private supplier of water for profit, and the question of its liability for negligence must be so determined. Lockhart v. Kansas City, 351 Mo. 1218, 175 S.W.2d 814, 815–816.

The brief of amicus curiae cites the early English case of Scott v. The London and St. Katherine Docks Company (1865), 3 H. & C. Reports 596, 601, 13 W.R. 410, 11 Jur. (N.S.) 204, 159 Eng.Rep. 665, wherein Chief Justice Erle announced the principle which later became known as the res ipsa loquitur doctrine: "There must be reasonable evidence of negligence. But where the thing is shewn to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants, that the accident arose from want of care."

Our cases, many of which are cited in the opinion of the Kansas City Court of Appeals (307 S.W.2d 36), are not in conflict with the doctrine announced by Chief Justice Erle. But attention must be given the clause "in the absence of explanation

by the defendants." (Actually, the city made none; it advanced one or more theories by which the break *could* have been caused, but explicitly denied having any reasoned opinion that any one of its theories *did* cause it.) In any event, however, to whom should the "explanation by the defendants" be made? And what effect does the "explanation" have upon the submissibility of the case?

Obviously, of course, the "explanation" is to be made to the jury or to the court if it be the trier of the fact. In this State it is well established as a general rule that the triers of the facts, under their duty to weigh the evidence, may believe or disbelieve any testimony affirmatively or defensively adduced by either of the parties, although such testimony is uncontradicted and unimpeached. State ex rel. Rice v. Public Service Commission, 359 Mo. 109, 220 S.W.2d 61, 65; Beckemeier v. Baessler, Mo., 270 S.W.2d 782, 787. And the law of this State is also clear that if it be herein determined that the breaking of the main was an occurrence that does not ordinarily happen if those in charge use due care and the cause of the break was unknown to plaintiff, and defendant had superior knowledge of or means of information as to the cause, then such evidence was sufficient to make a prima facie showing of negligence under the res ipsa doctrine, thereby raising "a substantial factual inference of defendant's negligence which amounts to evidence as distinguished from a mere procedural presumption, that does not disappear upon the submission of evidence tending to exculpate defendant, but remains in the case as evidence sufficient to support an affirmative finding for plaintiff." Clark v. Linwood Hotel, Inc., 365 Mo. 982, 291 S.W.2d 102, 105, and cases therein cited; Layton v. Palmer, Mo., 309 S.W.2d 561, 566.

Therefore, the essential question is: Was a prima facie case of negligence under the res ipsa doctrine shown by plaintiff? Admittedly, a water main, if prop-

erly laid and sound when laid, ordinarily would last without breaking for a *minimum* of 100 years, in the absence of internal or external violence. It is reasonable to infer therefore, that when the main broke after some 53 years of service, approximately one-half of its minimum expected duration, the pipe either was defective when laid, was carelessly laid or maintained or was subjected to such internal or external force as to cause it to break, or that it broke as a result of a combination of one or more of those causes.

The city selected the pipe, laid it and exclusively managed and controlled it. Under these circumstances, we are constrained to agree with the Foltis case, 21 N.Y.S.2d 800, 803, quoted with approval by the Kansas City Court of Appeals, 307 S.W.2d 36, 39: " 'The water main here in question was within the control of the defendant. It was defendant who selected the pipes and laid them. Cast-iron water mains which are properly laid four feet underground ordinarily do not break, any more than ordinarily trains are derailed, missiles fly, or elevators or walls fall; and when such a main does break the inference of negligence follows in logical sequence * * *.' "

Amicus curiae insists, however, that on further review of the Foltis case, 287 N.Y. 108, 38 N.E.2d 455, 460, the reviewing court, although affirming the earlier opinion from which we have quoted, made further observations which tend to show it would not have held the doctrine of res ipsa applicable in the instant case. The portion of the opinion upon which counsel for amicus curiae relies is as follows: "The fact that the break occurred in a water main which had been buried in the ground for several years weakens the probative value of the evidence, but it does not completely destroy it. Slight differences in the evidence might change the inferences which may fairly be drawn, but we agree with the trial judge that in this case an inference of negligence might reasonably be drawn from the unexplained occurrence

of the break. True, more than a remote possibility would still remain that the break may have been the result of causes against which the city could not by vigilance guard, and by stressing one circumstance rather than another the inference that the injury was due to any dereliction of duty by the city may gain or lose in strength. If the city has in its control evidence which would make clear the cause of the break or would show exactly what care it has exercised in the construction and maintenance of the water main, a failure to produce such evidence might be a factor in weighing probabilities. Reasonable men might perhaps differ as to the inference that should be drawn from the occurrence of the break even though the city should offer no proof, but we think that both reason and the weight of authority support the ruling of the trial judge that the defendant's motion at the close of the plaintiff's case to dismiss the complaint should be denied. *We agree that under the rule of res ipsa loquitur the plaintiff's proof that its property was damaged by a break in a water main constructed and controlled by the city was sufficient to establish prima facie that the injury was due to negligence of the city."* (Emphasis ours.)

The excerpt above quoted from the final opinion in the Foltis case is not helpful to the city, as we construe it. It unequivocally holds that "proof that [plaintiff's] property was damaged by a break in a water main constructed and controlled by the city was sufficient" under the res ipsa rule to make a submissible case. The only difference in the essential facts in that case was that the main had been in the ground seven years and the main in the instant case, which reasonably would be expected to last for a *minimum* of 100 years, had been in the ground fifty-three years. The difference was one of degree only, which presented not a question of law for the court but an evidential fact for the consideration of the jury. See Harke v. Haase, 335 Mo. 1104, 75 S.W.2d 1001, 1004.

Parenthetically, but, we think, worthy of note, is a further statement in the Foltis case, supra, 38 N.E.2d loc.cit. 458, 153 A.L.R. 1122: "The city produced no evidence to show the cause of the break. It did attempt to prove that whatever may have been the cause of the break, no negligence by the city, either in the construction or maintenance of the pipe caused or contributed to the injury. For that purpose it produced evidence which, if credited, was sufficient to show that the pipes were new when laid; that field inspectors of the city tested carefully all pipes before they were laid; and that it was their duty to see that the pipes were properly laid." In the instant case, the city's evidence fell far short of that adduced in behalf of the city in the Foltis case.

■ Neither can we agree with the contention of the city that, due to the lapse of time since installation and the difficulty of ascertaining the cause of the breaking of the pipe, the res ipsa doctrine is not applicable for the reason that one of the essential elements of the rule is that the defendant possesses superior knowledge or means of information as to the cause of the occurrence, which, it is contended, the evidence shows the city did not have. It is a known fact that water mains do break and cause damage. Surely, any supplier of water has or, in the exercise of ordinary care, should have superior knowledge or means of information as to the cause of a break in an underground water main installed and maintained by it in a street, over which it has exclusive control, than would an adjacent property owner, who could have none. Any modification of the rule on the grounds asserted by the city would place a premium upon a water supplier's studied indifference to facts of which, in the exercise of ordinary care, it should and could have knowledge or means of information superior to those of plaintiff.

■ And, finally, on the score of submissibility of the cause, we hold that the

possibility of the main breaking from some cause for which the city would not be liable does not preclude the right of plaintiff to submit to the jury the issue of the break being caused by negligence of the city. When it is once determined under the res ipsa doctrine that the breaking of the main raised a reasonable inference of negligence, as we have determined under the facts in the instant case, it is not necessary that the plaintiff go further and exclude every other reasonable theory of nonliability on the part of the defendant. "If a plaintiff in [a res ipsa case] were required to produce evidence that would exclude every reasonable theory but that of negligence of the defendant the doctrine would be annihilated." Cruce v. Gulf, Mobile & Ohio R. Co., 358 Mo. 589, 216 S.W.2d 78, 81. See also Maxie v. Gulf, Mobile & Ohio R. Co., 358 Mo. 1100, 219 S.W.2d 322, 325, 10 A.L.R.2d 1273; Shafer v. Southwestern Bell Telephone Co., Mo., 295 S.W.2d 109, 113.

■ For the reasons stated in the opinion of the Kansas City Court of Appeals, (307 S.W.2d 36) and the reasons herein stated, we hold that a submissible case was made under the res ipsa loquitur doctrine.

■ The city's final contention that the trial court erred in sustaining plaintiff's motion for new trial because of denying plaintiff's counsel the right to comment on the failure of the city to call as witnesses two of its employees who were at the scene of the occurrence should be and is overruled for the reasons set forth in the opinion of the Kansas City Court of Appeals, 307 S.W.2d 36, 40–42.

The order of the trial court sustaining plaintiff's motion for a new trial is affirmed and the cause remanded.

HYDE, WESTHUES, LEEDY and DALTON, JJ., concur.

STORCKMAN, J., dissents.

EAGER, J., dissents and concurs in dissenting opinion of Judge Storckman.

STORCKMAN, Judge (dissenting).

I find myself unable to agree that the res ipsa loquitur doctrine is applicable in the circumstances of this case. I do not understand that the doctrine creates any substantive rights or bestows a cause of action where none would exist absent the doctrine. The doctrine is a rule of evidence which permits the essential negligence to be proved by circumstantial evidence but negligence remains the basis of recovery. Harke v. Haase, 335 Mo. 1104, 75 S.W.2d 1001, 1003–1004(7, 8); Girratono v. Kansas City Public Service Co., 363 Mo. 359, 251 S.W.2d 59, 64(6); Warner v. Terminal Railroad Association of St. Louis, 363 Mo. 1082, 257 S.W.2d 75, 80 (8).

In order to make a submissible case the character of the occurrence and the circumstances in evidence must warrant an inference of negligence. Taylor v. St. Louis Public Service Co., Mo., 303 S.W.2d 608(1); Harke v. Haase, 335 Mo. 1104, 75 S.W.2d 1001, 1003–1004(7); Sweeney v. Erving, 228 U.S. 233, 33 S.Ct. 416, 418, 57 L.Ed. 815. Or as stated in Kapros v. Pierce Oil Corporation, 324 Mo. 992, 25 S. W.2d 777, 781, 78 A.L.R. 722: "From the Missouri authorities just reviewed, especially the Pointer and McGrath Cases [Pointer v. Mountain Ry. Const. Co., 269 Mo. 104, 189 S.W. 805, L.R.A.1917B, 1091; McGrath v. St. Louis Transit Co., 197 Mo. 97, 94 S.W. 872], it appears all the facts connected with each particular case must be consulted, and from them the court must be able to take judicial notice, as a matter of common knowledge and experience, that the accident prima facie could not have occurred but for negligence on the part of the defendant." See also Russell v. St. Louis & S. F. Ry. Co., Mo.App., 245 S.W. 590, 591(1–3).

Does the evidence in this case reasonably warrant an inference that the water

main broke due to negligence and that the negligence was that of the defendant? Can we take "judicial notice, as a matter of common knowledge and experience, that the accident could not have occurred but for negligence on the part of the defendant?" I do not think so. The essential facts are that the 6-inch cast-iron water main which broke and caused the damage was approximately four feet below the street surface and had been in place for about fifty-three years. In my opinion this set of facts does not "bespeak negligence." As I see it, the occurrence is not such "as does not ordinarily happen if those in charge use due care." McCloskey v. Koplar, 329 Mo. 527, 46 S.W.2d 557, 559, 92 A.L.R. 641.

The Foltis case, 287 N.Y. 108, 38 N.E.2d 455, 460(9), as well as others, concedes that the city was under no duty to examine the water pipe buried four feet under ground in the absence of some warning that the pipe had shifted or deteriorated. Further, the lapse of time, nine years in the Foltis case and fifty-three years in the present case, before the break occurred is persuasive that the break was not due to an original defect *which could have been discovered on reasonable inspection* or to the manner in which the pipes were laid. Apart from the evidence in the case it is common knowledge that cast-iron water pipes underground can reasonably be expected to remain serviceable and in good condition much longer than the fifty-three years this pipe was in use.

In these circumstances I see nothing that this defendant did that might reasonably be said to have caused the break or anything it failed to do which if done would have prevented it. On the other hand, as a result of common knowledge and experience, it occurs to me that the break probably occurred as the result of independent causes, such as soil settlement or the pounding of heavy traffic on a busy city street, over which the defendant has no control and for which it could not be held liable on the theory of negligence. The evidence does not suggest anything the city could or should have done to avoid this occurrence or similar ones in the future.

Further, I doubt that a water main laid four feet under a city street is under such control and management of the city as contemplated by McCloskey v. Koplar, 329 Mo. 527, 46 S.W.2d 557, 559, so as to make the res ipsa loquitur doctrine applicable on a mere showing that the main fractured. This I deem to be the holding of Goldman v. City of Boston, 274 Mass. 329, 174 N.E. 686, 687, with which I agree.

Since the res ipsa loquitur doctrine is a part of the law of evidence, the need for invoking it has tended to diminish because of the improved discovery provisions of the new Civil Code of Missouri, V.A.M.S., § 510.010 et seq. As stated in Warner v. Terminal Railroad Association of St. Louis, 363 Mo. 1082, 257 S.W.2d 75, 80, the use of the discovery process "in many cases should enable a plaintiff to state and prove a claim on specific negligence, although before he would have been obliged to rely upon a res ipsa loquitur inference."

Some of the more recent cases where this court has refused to apply the doctrine are Shafer v. Southwestern Bell Telephone Co., Mo., 295 S.W.2d 109, electrocution by contact with a fuse panel; Frazier v. Ford Motor Co., 365 Mo. 62, 276 S.W.2d 95, sudden stopping and lurching of automobile body on an assembly line; Cudney v. Midcontinent Airlines, 363 Mo. 922, 254 S.W.2d 662, a sudden lurch of an airplane; Girratono v. Kansas City Public Service Co., 363 Mo. 359, 251 S.W.2d 59, the mere skidding of an automobile; Maybach v. Falstaff Brewing Corporation, 359 Mo. 446, 222 S.W.2d 87, the mere proof of the explosion of two bottles of beer after it left the manufacturer's possession.

I would reverse the order of the trial court granting a new trial and direct the reinstatement of the judgment for the defendant.