[Cite as *Nelson v. Cleveland*, 2013-Ohio-493.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 98548

---

## TAMICKA NELSON

PLAINTIFF-APPELLANT

vs.

## CITY OF CLEVELAND, ET AL.

DEFENDANTS-APPELLEES

---

### JUDGMENT:
### REVERSED AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-729088

**BEFORE:** McCormack, J., Keough, P.J., and E.A. Gallagher, J.

**RELEASED AND JOURNALIZED:** February 14, 2013

**ATTORNEY FOR APPELLANT**

Earl F. Ghaster
Kubyn & Ghaster
8373 Mentor Avenue
Mentor, OH 44060


**ATTORNEYS FOR APPELLEES**

Barbara Langhenry
Director of Law
City of Cleveland

Jerome A. Payne, Jr.
Assistant Director of Law
Room 106 – City Hall
601 Lakeside Avenue
Cleveland, OH 44114

TIM McCORMACK, J.:

{¶1} Plaintiff-appellant, Tamicka Nelson ("Nelson"), appeals the trial court's decision granting summary judgment in favor of the defendant-appellee, city of Cleveland ("the City"). The trial court determined that the City is entitled to sovereign immunity under R.C. Chapter 2744 for any personal injury or property damage Nelson incurred. For the reasons that follow, we reverse the grant of summary judgment.

## Substantive Facts and Procedural History

{¶2} The basic facts of this case are not in dispute. On June 29, 2008, Nelson was traveling eastbound on State Route 2 in the City, near the Edgewater Park exit. As she approached the exit sign, Nelson noticed a large puddle of standing water that extended across all three lanes of traffic. There were no cars ahead of her. She entered the puddle while traveling approximately 40 miles per hour. Upon entering the puddle, Nelson lost control of her car and struck a median. Nelson testified that cars continued on through the water, passing her vehicle after the collision. As a result of this accident, Nelson suffered personal injury and property damage.

{¶3} On June 11, 2010, Nelson filed a complaint against the City and John Does #1-3 in the Cuyahoga County Court of Common Pleas.[1] In her complaint, Nelson alleged that the City was negligent in failing to keep public roads open and free from

---

[1] Nelson obtained leave to file an amended complaint on May 27, 2011. The amended complaint named Northeast Ohio Regional Sewer District "NORSD" as a defendant. On January 31, 2012, Nelson voluntarily dismissed defendant NORSD without prejudice.

obstructions. Nelson also alleged that the City negligently failed to maintain and/or repair the sewer catch basins and water runoff systems. Nelson claimed that she sustained injuries and property damage due to the City's negligence.

{¶4} On February 8, 2012, the City filed a motion for summary judgment pursuant to Civ.R. 56, contending that it is immune from liability in this action pursuant to R.C. 2744.02. Nelson, in her brief in opposition to defendant's motion for summary judgment filed on March 30, 2012, argued that due to the exceptions outlined in R.C. 2744.02(B)(2) or R.C. 2744.02(B)(3), which preclude immunity for loss caused by negligence, the City is not entitled to the protection afforded by sovereign immunity. The trial court granted summary judgment in favor of the City, stating that the City is immune from liability for Nelson's claims because neither exception to R.C. 2744.02 applies in the instant case. Specifically, the trial court held that "R.C. 2744.02(B)(3) does not apply because standing water is not an obstruction * * * [and] R.C. 2744.02(B)(2) also fails because there was no evidence of negligence."

## Assignments of Error

{¶5} Nelson now appeals the trial court's order, raising the following assignments of error:

> I. The trial court erred to the prejudice of Appellant-Plaintiff by granting Appellee-Defendant City of Cleveland's Motion for Summary Judgment based upon an erroneous finding that the sovereign immunity exception set forth in Section 2744.02(B)(2) does not apply based upon the unsubstantiated fact that "there was no evidence of negligence."
>
> II. The trial court erred to the prejudice of Appellant-Plaintiff by granting Appellee-Defendant City of Cleveland's Motion for Summary Judgment

based upon an erroneous finding that the sovereign immunity exception set forth in Section 2744.02(B)(3) does not apply as "water is not an obstruction."

## Standard of Review

{¶6} Summary judgment is appropriate where it appears that: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. *Harless v. Willis Day Warehousing Co., Inc.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978); Civ.R. 56(C).

{¶7} The burden is on the movant to show that no genuine issue of material fact exists. *Id.* Conclusory assertions that the nonmovant has no evidence to prove its case are insufficient; the movant must specifically point to evidence contained within the pleadings, depositions, answers to interrogatories, written admissions, affidavits, etc., which affirmatively demonstrate that the nonmovant has no evidence to support his claims. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 1996-Ohio-107, 662 N.E.2d 264; Civ.R. 56(C). Unless the nonmovant then sets forth specific facts showing there is a genuine issue of material fact for trial, summary judgment will be granted to the movant.

{¶8} An appellate court reviews a trial court's grant of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241. Accordingly, appellate courts must independently review the record to determine if

summary judgment was appropriate. In other words, appellate courts need not defer to trial court decisions on summary judgment. *See Brown v. Scioto Cty. Bd. Commrs.*, 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (4th Dist.1993).

## Political Subdivision Immunity

{¶9} Chapter 2744 of the Ohio Revised Code, the Political Subdivision Tort Liability Act, contains a comprehensive statutory scheme for the tort liability of political subdivisions and its employees. The statutory framework begins with R.C. 2744.02(A)(1), a general grant of immunity to a political subdivision from civil liability. It provides as follows:

> For the purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function. R.C. 2744.02(A)(1).

{¶10} The statute enumerates five exceptions to the general grant of immunity. The five exceptions are provided in R.C. 2744.02(B). Two of these enumerated exceptions are relevant to this case. Nelson claims that the City is liable under R.C. 2744.02(B)(2), which states: "Except as otherwise provided in sections 3314.07 and 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions."

{¶11} Nelson further asserts that the City is liable under R.C. 2744.02(B)(3). This exception to political subdivision immunity exists when a political subdivision negligently fails to remove obstructions from public roadways:

> Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads, except that it is a full defense to that liability, when a bridge within a municipal corporation is involved, that the municipal corporation does not have the responsibility for maintaining or inspecting the bridge.

R.C. 2744.02(B)(3).

{¶12} The statute also provides several defenses for political subdivisions and their employees. Relevant to this case is R.C. 2744.03(A)(5), which extends immunity arising out of the exercise of discretion by a political subdivision:

> In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function,* * *[t]he political subdivision is immune from liability if the injury, death, or loss to person or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner.

{¶13} In order to correctly determine whether immunity applies with respect to a political subdivision, a detailed analysis is required. The Ohio Supreme Court determined that the applicability of the immunity statute requires a three-tier analysis:

> Determining whether a political subdivision is immune from tort liability
>
> pursuant to R.C. Chapter 2744 involves a three-tiered analysis. *Greene*

*Cty. Agricultural Soc. v. Liming* (2000), 89 Ohio St.3d 551, 556-557, 2000-Ohio-486, 733 N.E.2d 1141. The first tier is the general rule that a political subdivision is immune from liability incurred in performing either a governmental function or proprietary function. *Id.* at 556-557, 733 N.E.2d 1141; R.C. 2744.02(A)(1). However, that immunity is not absolute. R.C. 2744.02(B); *Cater v. Cleveland* (1998), 83 Ohio St.3d 24, 28, 1998-Ohio-421, 697 N.E.2d 610.

The second tier of the analysis requires a court to determine whether any of the five exceptions to immunity listed in R.C. 2744.02(B) apply to expose the political subdivision to liability. *Id.* at 28, 697 N.E.2d 610. At this tier, the court may also need to determine whether specific defenses to liability for negligent operation of a motor vehicle listed in R.C. 2744.02(B)(1)(a) through (c) apply.

If any of the exceptions to immunity in R.C. 2744.02(B) do apply and no defense in that section protects the political subdivision from liability, then the third tier of the analysis requires a court to determine whether any of the defenses in R.C. 2744.03 apply, thereby providing the political subdivision a defense against liability.

*Colbert v. Cleveland*, 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781, ¶ 7-9.

{¶14} Under this three-tier analysis, the court reaches the end of its inquiry when the acts or omissions of a political subdivision do not fit under any of the five exceptions

enumerated in R.C. 2744.02(B). In other words, the courts do not engage in the third tier of the analysis regarding available defenses provided in R.C. 2744.03 if no exception under R.C. 2744.02(B) can be found to remove the general grant of immunity. *O'Toole v. Denihan*, 118 Ohio St.3d 374, 2008-Ohio-2574, 889 N.E.2d 505.

## Analysis

### I. Applicability of R.C. 2744.02(B)(2)

{¶15} Nelson's first assignment of error states that the trial court erred in finding that the sovereign immunity exception outlined in R.C. 2744.02(B)(2) does not apply. Nelson alleges that she has provided competent evidence of the City's negligence in its maintenance and repair of Route 2 ("Shoreway") eastbound, near the Edgewater Park exit ramp.

{¶16} Political subdivisions are generally immune from liability incurred in performing either a governmental function or a proprietary function. R.C. 2744.02(A)(1). However, in applying the three-tier analysis outlined above, we must now determine whether any exception under R.C. Chapter 2744 applies. Nelson asserts that the exception outlined in R.C. 2744.02(B)(2) should apply. As previously stated, R.C. 2744.02(B)(2) provides that political subdivisions are liable for "injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." The City asserts that Nelson has failed to provide facts that would create a genuine issue of fact demonstrating that it performed a proprietary act negligently.

**{¶17}** Before R.C. 2744.02(B)(2) will remove a political subdivision's immunity, Nelson must establish the following: (1) the elements required to sustain a negligence action; and (2) that the negligence arose out of a "proprietary function." *Williams v. Glouster*, 4th Dist. No. 10CA58, 2012-Ohio-1283, 864 N.E.2d 102, ¶ 17, citing *Gabel v. Miami E. School Bd.*, 169 Ohio App.3d 609, 2006-Ohio-5963, ¶ 39-40 (2d Dist.).

**{¶18}** R.C. 2744.01(G)(2) lists specific functions expressly designated as proprietary functions. This list includes "[t]he maintenance, destruction, operation, and upkeep of a sewer system." R.C. 2744.01(G)(2)(d). Moreover, Ohio courts have long recognized that a city can be liable for the negligent maintenance of its sewers. *See Portsmouth v. Mitchell Mfg. Co.*, 113 Ohio St. 250, 148 N.E. 846 (1925). In *Mitchell Mfg.*, the Supreme Court held that, while there is no liability for mere failure to construct sewers, "the operation and upkeep of sewers is not a governmental function, but is a ministerial or proprietary function of the city." *Id.* at 255. Similarly, the court later held that when a municipality does construct or maintain sewers, "it becomes its duty to keep them in repair and free from conditions which will cause damage to private property." *Doud v. Cincinnati*, 152 Ohio St. 132, 137, 87 N.E.2d 243 (1949). Thus, the municipality becomes liable "in the same manner and to the same extent as a private person under the same circumstances." *Id.*

**{¶19}** "Determining whether an allegation of negligence relates to the maintenance, operation, or upkeep of a sewer system or, instead, the design, construction, or reconstruction of a sewer system is not always a simple inquiry." *Essman v.*

*Portsmouth*, 4th Dist. No. 09CA3325, 2010-Ohio-4837, ¶ 2.   A complaint is properly characterized as a "maintenance, operation, or upkeep issue" when "remedying the sewer problem would involve little discretion but, instead, would be a matter of routine maintenance, inspection, repair, removal of obstructions, or general repair of deterioration."   *Id.*, citing *Martin v. Gahanna*, 10th Dist. No. 06AP-1175, 2007-Ohio-2651, ¶ 17.   On the other hand, a complaint presents a design or construction issue if "remedying a problem would require a city to, in essence, redesign or reconstruct the sewer system."   *Id.*, citing   *Zimmerman v. Summit Cty.*, 9th Dist. No. 17610, 1997 Ohio App. LEXIS 52 (Jan. 15, 1997).

{¶20} In this case, Nelson's allegation that the City's actions pertaining to the sewers along the Shoreway amount to a proprietary function is well taken.   R.C. 2744.01(G)(2) expressly designates "the maintenance, destruction, operation, and upkeep of a sewer system" as a proprietary function.   Nelson claims that the City failed to properly maintain its sewers and catch basins along the Shoreway.   She maintains that the City could have prevented the large puddle of standing water on the Shoreway had it properly maintained, inspected, and repaired the catch basins.   Nelson is not alleging that in order to remedy the existing problem on the Shoreway, the City would, essentially, need to redesign or reconstruct the sewer system.   Rather, she alleges that remedying the sewer problem would involve little discretion and would be a matter of timely inspections and maintenance.   *Essman* at ¶ 2.   We find, therefore, that the City's maintenance of its

sewer system along the Shoreway at issue is a proprietary function, allowing for the consideration of the immunity exception provided in R.C. 2744.02(B)(2).

{¶21} Because we find that the City's maintenance of its sewer system in this case is a proprietary function, we must next address whether Nelson has set forth facts that create a genuine issue as to the City's negligence in that regard. Nelson alleges there was sufficient evidence of negligence to avoid summary judgment because she established that a large unnatural accumulation of a pool of water formed on the regularly traveled portion of the roadway, which the City knew or should have known, instituted a dangerous condition and that condition caused her accident. For the reasons that follow, we agree.

{¶22} In order to establish negligence, one must show the existence of a duty, a breach of that duty, and the breach was the proximate cause of an injury. *Menifee v. Ohio Welding Prods., Inc.*, 15 Ohio St.3d 75, 84, 472 N.E.2d 707 (1984). Negligence may not be presumed from mere proof of an injury caused by some act of the defendant. The burden is on the plaintiff to prove by a preponderance of the evidence that the defendant failed to exercise the care that a reasonably prudent person is accustomed to exercise under the same or similar circumstances. *Republic Light & Furniture Co. v. Cincinnati*, 97 Ohio App. 532, 536-537, 127 N.E.2d 767 (1st Dist.1954). The trier of fact may not speculate as to what the standard of care should be. Rather, where the standard of care is not a matter of common knowledge to a jury, the burden rests on the plaintiff to introduce substantial evidence from which a jury may reasonably infer the

standard of care that is appropriate to the situation established by the evidence. *Id.*, citing *Englehardt, a Minor v. Philipps*, 136 Ohio St. 73, 23 N.E.2d 829 (1939).

{¶23} In this case, Nelson alleges that the City negligently maintained and/or repaired the catch basins along the Shoreway near the Edgewater exit. In support of her claim, Nelson submitted an affidavit of an expert, James D. Madden, P.E. Nelson's expert opined that the City has not taken the necessary measures to properly maintain the drainage system for the Shoreway located near the Edgewater exit. Affidavit ¶ 28. Specifically, Nelson's expert states that the condition of the drainage system "that caused the development of the standing water" at the site of the accident had been deteriorating "for a considerable time." Affidavit ¶ 32. He further states that as the drainage condition deteriorated, larger areas of standing water would accumulate due to the debris that would progressively slow the drainage rate, and this standing water was a "hazard" and its presence was the notice of a problem with the drainage. *Id.* Nelson's expert maintains that this dangerous condition on the Shoreway could be completely eliminated by cleaning the drainage system "at an interval that would keep the drainage system functioning properly, rather than waiting for the inevitable development of * * * standing water." *Id*. at ¶ 33. Finally, Nelson's expert stated that, despite a history of drainage system clogging, the City's records confirm that there had been no maintenance of the drainage system in the area of the accident. Affidavit ¶ 32.

{¶24} The City, on the other hand, presented evidence that it regularly cleans the catch basins on the Shoreway. The Commissioner of the City's Water Pollution Control

department, Rachid Zoghaib, testified that preventative maintenance — a blanket cleaning — is performed once every year, typically in October or November, to coincide with a time when the leaves have fallen off the trees. He further testified that the catch basins were fully cleaned in November 2007 (seven months before Nelson's accident) and, again, in October 2008.

{¶25} Construing the evidence in a light most strongly in favor of Nelson, we believe that genuine issues of material fact exist concerning Nelson's allegation that the City was negligent in its maintenance of the Shoreway. Nelson presented evidence, by way of her expert witness, that the hazardous condition that existed on the Shoreway at the time of the accident was the result of the City's failure to maintain the drainage system, including the catch basins, sewer pipes, and traps.

{¶26} Because we find that R.C. 2744.02(B)(2) applies in this case, and we find that there are genuine issues of fact regarding the City's negligent maintenance of the Shoreway's sewer system, we must now look at possible defenses presented by the City. Under the third tier of a sovereign immunity analysis, the court must determine whether any of the defenses outlined in R.C. 2744.03 apply, thereby providing the political subdivision with a defense against liability. *Colbert*, 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781, ¶ 9. R.C. 2744.03(A)(5) extends immunity to a political subdivision if the injury or damage "resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies,

materials, personnel, facilities, and other resources" unless this judgment or discretion "was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner."

**{¶27}** Under this tier, the City argues that its summary judgment motion should be granted because the alleged negligent behavior on the part of the employees of the City falls within its own judgment or discretion. In support of its position, the City provides that it has adopted a plan to clean the Shoreway catch basins in the fall, to coincide with the leaves falling. The City further states that this adopted course of action to maintain the catch basins is not routine; rather, the City's use of its personnel is a discretionary function that falls within the duties of the City's employees.

**{¶28}** Courts have consistently held that sovereign immunity operates to protect political subdivisions from liability based on discretionary judgments concerning the allocation of limited resources. *Frenz v. Springvale Golf Course & Ballroom*, 8th Dist. No. 97593, 2012-Ohio-3568, citing *Hall v. Ft. Frye Local School Dist. Bd. of Edn.*, 111 Ohio App.3d 690, 699, 676 N.E.2d 1241 (4th Dist.1996). This immunity, however, "is not intended to protect conduct which requires very little discretion or independent judgment." (Citations omitted.) *Id.* Courts have held that property maintenance, in general, does not involve "'the type of judgment or discretion contemplated by R.C. 2744.03(A)(3).'" *Frenz* at ¶ 22, quoting *Hall* at 702. More on point, the Fourth District Court of Appeals has held that a city's decision "'regarding whether, when, and how to comply with its duty to maintain the sewer does not fall within the R.C. 2744.03(A)(5) exception.'" *Williams v. Glouster*, 4th Dist. No. 10CA58,

2012-Ohio-1283, quoting *Malone v. Chillicothe*, 4th Dist. No. 05CA2869, 2006-Ohio-3268, ¶ 20.

**{¶29}** Immunity pursuant to R.C. 2744.03(A)(5) relates to activities that require the balancing of alternatives or making decisions involving an increased amount of official judgment or discretion. *Inland Prods., Inc. v. Columbus*, 193 Ohio App.3d 740, 2011-Ohio-2046, 954 N.E.2d 141, ¶ 62 (10th Dist.). Discretion, in reference to R.C. 2744.03(A)(5), involves the exercise of independent judgment and policymaking. *Hacker v. Cincinnati*, 130 Ohio App.3d 764, 770, 721 N.E.2d 416 (1st Dist.1998). "Some positive exercise of judgment that portrays a considered adoption of a particular course of conduct in relation to an object to be achieved is required in order to demonstrate an exercise of discretion for which R.C. 2744.03(A)(5) confers immunity from liability on a political subdivision." *Addis v. Howell*, 137 Ohio App.3d 54, 60, 738 N.E.2d 37 (2d Dist.2000). A political subdivision, however, may not simply assert that all of its decisions are discretionary under R.C. 2744.03(A)(5). *Hacker*. "[R]outine decisions requiring little judgment or discretion and that, instead, portray inadvertence, inattention, or unobservance, are not covered by the defense provided by R.C. 2744.03(A)(5)." *Hubbell v. Xenia*, 175 Ohio App.3d 99, 2008-Ohio-490, 885 N.E.2d 290, ¶ 22 (2d Dist.).

**{¶30}** The City contends that the decision to inspect and maintain the sewer catch basins along the Shoreway involved the exercise of discretion, in particular with respect to the use of its resources and personnel. It further argued that R.C. 2744.03(A)(5)

absolved it from liability with respect to its decisions regarding the repair and maintenance of the sewer system. Based on the foregoing decisions, we find the City's argument not well taken. Decisions involving the proper maintenance of the sewer or drainage system is a proprietary act, which is mandatory and not discretionary. These decisions do not involve a high degree of discretion. Rather, they involve routine inspection and maintenance. Therefore, the defense outlined in R.C. 2744.03(A)(5) is not available to the City.

{¶31} Consequently, Nelson's first assignment of error is sustained.

## II. Applicability of R.C. 2744.02(B)(3)

{¶32} In granting summary judgment in favor of the City, the trial court also determined that R.C. 2744.02(B)(3) does not apply and, thus, the City retains its immunity. Nelson's second assignment of error states that the trial court erred in finding that the sovereign immunity exception outlined in R.C. 2744.02(B)(3) does not apply. Specifically, appellant asserts that this exception does, in fact, apply, because the standing water on the Shoreway was an "obstruction," thus, precluding the City's immunity.

{¶33} As previously stated, R.C. 2744.02(B)(3) provides that political subdivisions "are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads." The statute, however, does not define "obstruction." We must look, therefore, to the interpretation of this statute by the courts.

{¶34} The Ohio Supreme Court analyzed the immunity statute in order to determine whether there was sovereign immunity for ice on public roads. *Howard v. Miami Twp. Fire Div.*, 119 Ohio St.3d 1, 2008-Ohio-2792, 891 N.E.2d 311 ("*Howard I*"). More on point, the Supreme Court considered the issue of whether an accumulation of ice on the roadway was an "obstruction" within the meaning of R.C. 2744.02(B)(3). *Id.* In reviewing the statutory history of political subdivision immunity, the Supreme Court determined that, for purposes of R.C. 2744.02(B)(3), "an 'obstruction' must be an obstacle that blocks or clogs the roadway and not merely a thing or condition that hinders or impedes the use of the roadway or that may have the potential to do so." *Id.* at ¶ 30. Applying this definition of "obstruction," the Supreme Court found in *Howard I* that an accumulation of ice on a roadway is not an obstruction within the meaning of R.C. 2744.02(B)(3). *Id.*

{¶35} In *Howard*, a 16 year-old boy died when he lost control of his vehicle upon hitting black ice that had formed on the roadway following fire department training exercises. *Id.* The court of appeals in that case "held that [an] 'obstruction' as it is used in R.C. 2744.02(B)(3), should be interpreted to mean any object placed or erected in a public roadway that has the potential of interfering with the public's use of that roadway. An interference occurs when the public's safe use of the roadway is jeopardized.'" *Id.* at ¶ 22, quoting *Howard v. Miami Twp. Fire Div.*, 171 Ohio App.3d 184, 2007-Ohio-1508, 870 N.E.2d 197, ¶ 23-24 (2d Dist.) ("*Howard II*"). The appellate court went on to find as follows:

"[A]n icy mixture on a public roadway has the potential of interfering with the public's safe use of the roadway by creating an opportunity for loss of traction and/or loss of control of a vehicle and * * *the township was not entitled to judgment as a matter of law under R.C. 2744.02(B)(3), because the political subdivision had a duty of care to remove this obstruction from the road."

*Id.* at ¶ 22, quoting *Howard II*, 171 Ohio App.3d 184, 2007-Ohio-1508, 870 N.E.2d 197, ¶ 26 (2d Dist.). The Supreme Court, however, rejected this broad interpretation of the meaning of the word "obstruction," reversed the appellate court, and found that the appellate court's decision ignored the statutory history of R.C. 2744.02(B)(3):

[W]e believe that the General Assembly purposely replaced the phrase "free from nuisance" with "other negligent failure to remove obstructions." To find otherwise is to conclude that the legislature's action in amending the statute was a superfluous act.

We are persuaded that the legislature's action in amending R.C. 2744.02(B)(3) was not whimsy but a deliberate effort to limit political subdivisions' liability for injuries and deaths on their roadways.

*Howard I* at ¶ 25-26. The Supreme Court further stated that the word "obstruction" requires something greater than a nuisance:

[W]e discern a legislative intent to limit political-subdivision liability for roadway injuries and deaths. The General Assembly, in furtherance of its goal, used the word "obstructions" in a deliberate effort to impose a condition more demanding than a showing of a "nuisance" in order for a plaintiff to establish an exception to immunity.

*Id.* at ¶ 29.

{¶36} Following the Supreme Court's decision in *Howard I,* the Sixth District Court of Appeals in *Engle v. Williams Cty.,* 6th Dist. No. F-07-027, 2008-Ohio-3852, applied the Supreme Court's definition of "obstruction" within the meaning of R.C.

2744.02(B)(3) to an accumulation of water on the roadway. In doing so, the court determined that water accumulated on a county road was not an "obstruction" pursuant to the statutory exception to sovereign immunity for failure to remove obstructions in the roadway, thus finding the county immune from civil liability for its alleged failure to remove standing water. *Id.*

{¶37} In *Engle*, the driver of a vehicle lost control while driving through standing water on a roadway. The standing water was in a protected wetlands area that had been saturated by heavy rain. The court of appeals determined that the Supreme Court's decision in *Howard I* was not limited to circumstances involving only ice, finding that the water in that case "was not blocking or clogging the roadway and was therefore not an obstruction as contemplated by R.C. 2744.02(B)(3)." *Id*. at ¶ 5.

{¶38} The instant case involves standing water in the form of a large puddle that stretched across three lanes of traffic on the Shoreway. There is no evidence that this puddle either blocked or clogged traffic. Nelson testified that she saw no other vehicles ahead of her and, following her accident, other vehicles continued on through the puddle beyond her vehicle. While the standing water may have impeded traffic on the Shoreway, an impediment such as this does not rise to the level of an obstruction as defined by the Ohio Supreme Court in *Howard I*. Therefore, the exception to political subdivision immunity outlined in R.C. 2744.02(B)(3) does not apply, and Nelson's second assignment of error is without merit.

**{¶39}** This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellant recover of said appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIM McCORMACK, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
EILEEN A. GALLAGHER, J., CONCUR