[Cite as *McCormick v. Flaugher*, 2020-Ohio-2686.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| WILLIAM F. McCORMICK | JUDGES:<br>Hon. William B. Hoffman, P.J.<br>Hon. Craig R. Baldwin, J. |
| Plaintiff-Appellee | Hon. Earle E. Wise, Jr., J. |
| -vs- | Case No. 2019 CA 0094 |
| FRANK V. FLAUGHER, JR. et al., | |
| Defendants-Appellants | O P I N IO N |

CHARACTER OF PROCEEDINGS: Appeal from the Richland County Court of
Common Pleas, Case No. 2016-CV-
0554R

JUDGMENT:

DATE OF JUDGMENT ENTRY: April 22, 2020

APPEARANCES:

For Plaintiff-Appellee                    For Defendants-Appellants

TODD H. NEUMAN                          JOHN D. LATCHNEY
JEFFREY R. CORCORAN                     O'Toole, McLaughlin, Dooley & Pecora
Allen Stovall Neuman Fisher &           Company, LPA
Ashton, LLP                             5455 Detroit Road
17 South High Street, Suite 1220        Sheffield Village, Ohio  44054
Columbus, Ohio  43125

*Hoffman, P.J.*

{¶1}   Defendant-appellant City of Ontario ("the City") appeals the September 23, 2019 Order, which overruled its motion for summary judgment, following this Court's remand order in *McCormick v. Flaugher*, 5th Dist. Richland App. No. 18CA53, 2019-Ohio-1211.  Plaintiff-appellee is William McCormick ("McCormick").

STATEMENT OF THE FACTS AND CASE

{¶2}   McCormick and Frank Flaugher own neighboring properties in the Chambers Country Meadows Subdivision in Ontario, Richland County, Ohio.  Flaugher purchased his home and property located at 237 Chambers Road in November, 2000 ("the Flaugher Property").  McCormick purchased his home and property located at 261 Chambers Road ("the McCormick Property") in March, 2006.

{¶3}   An intermittent stream and a dry detention basin, or pond ("the Detention Pond"), are located on a parcel of vacant property located between and to the east of the Flaugher and McCormick Properties.   The Detention Pond, which existed prior to Flaugher purchasing the Flaugher Property, was formed by an earthen dam, or headwall, across the intermittent stream with a 24 inch control pipe outlet and an overflow spillway. The Detention Pond and the intermittent stream were part of the storm water management system of the Chambers Country Meadows Subdivision, and intended to control run-off rainwater. Since the development of the Subdivision in the mid-1990s, the City has had access by easement to the Detention Pond and the intermittent stream and has exercised some degree of control over the area, including mowing grass and replacing dislodged rip-rap.  The City is permitted to manage the waters of the state of Ohio within its municipality pursuant to an MS4 permit and an easement issued by the Ohio Environmental Protection Agency

{¶4}   In January, 2006, the vacant property was divided into two parcels. Flaugher purchased the roughly L-shaped parcel immediately adjacent to the southern and eastern property borders of the Flaugher Property.  With this purchase, Flaugher acquired the property situated between the Flaugher and McCormick Properties as well as a portion of the Detention Pond containing part of the headwall.

{¶5}   When McCormick purchased the McCormick Property, there was no noticeable erosion on the Property, and the Detention Pond was functioning properly.  On or about April 9, 2009, the City modified the Detention Pond by removing the 24 inch control pipe and cutting a V-shaped breach in the headwall.  The City also conducted work on the overflow spillway, which was not functioning properly.

{¶6}   On May 31, 2016, McCormick filed a complaint against the City and Frank V. Flaugher, Jr., alleging the City's actions changed the course and amount of water flowing across the McCormick Property, resulting in erosion and damage thereto.   The City filed an Answer on July 21, 2016.   McCormick filed an amended complaint on November 22, 2017, and the City filed its answer on January 18, 2018.   (The claims against Flaugher are not addressed in this appeal.).

{¶7}   The City filed a motion for summary judgment, arguing it was immune from liability pursuant R.C. Chapter 2744. Via Judgment Entry filed June 5, 2018, the trial court granted summary judgment in favor of the City.  The trial court found the material facts were undisputed and the City's actions were governmental and immune from any claims. The trial court held because "a remedy to both the original problem and [McCormick's] erosion issue would require engineering studies, a redesign of the headwall and its outlets, and a reconstruction of the headwall to the new design standards," the actions of

the City were governmental as defined by R.C. 2744.01(C)(2); therefore, immune from any claims under R.C. 2744.02(A)(1). June 5, 2018 Judgment Entry at 11.

{¶8} McCormick appealed the trial court's June 5, 2018 Judgment Entry to this Court. This Court vacated the trial court's grant of summary judgment to the City and remanded the matter. *McCormick v. Flaugher*, 5th Dist. Richland App. No. 18CA53, 2019-Ohio-1211. We found "the record contains at least one question of material fact regarding whether the pond still functions that must be resolved prior to deciding whether [the City's] acts were proprietary or governmental." *Id.* at para. 34.

{¶9} Following the remand from this Court, the City filed a new motion for summary judgment on May 13, 2019. Therein, the City argued McCormick's claims were barred by the discretionary immunity conferred upon it pursuant to R.C. 2744.03(A)(5). McCormick filed his memorandum contra on June 12, 2019.

{¶10} Via Order filed September 23, 2019, the trial court overruled the City's motion for summary judgment. The trial court noted the City failed to present Civ. R. 56(C) quality evidence establishing whether the Detention Pond was still functioning. The trial court explained, "This was the genuine issue of material fact that the appellate court found was necessary to resolve prior to deciding whether [the City's] actions were governmental or proprietary." Sept. 23, 3019 Order at 3-4. The trial court found, because the City failed to meet its initial evidentiary burden, the same genuine issue of material fact remained unresolved; therefore, "reasonable minds could draw different conclusions from the undisputed facts in the record." *Id.* at 4. The trial court concluded the City's motion for summary judgment was not well taken and overruled the same.

{¶11} It is from this judgment entry the City appeals, raising as its sole assignment of error:

THE TRIAL COURT ERRED IN DENYING DEFENDANT CITY OF ONTARIO'S MOTION FOR SUMMARY JUDGMENT WHICH ASSERTED R.C. 2744.01(A)(5) IMMUNITY.

STANDARD OF REVIEW

{¶12} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 36, 506 N.E.2d 212 (1987). As such, this Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).

{¶13} Civ.R. 56 provides summary judgment may be granted only after the trial court determines: 1) no genuine issues as to any material fact remain to be litigated; 2) the moving party is entitled to judgment as a matter of law; and 3) it appears from the evidence that reasonable minds can come to but one conclusion and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 364 N.E.2d 267 (1977).

{¶14} It is well established the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1987). The standard for granting

summary judgment is delineated in *Dresher v. Burt*, 75 Ohio St.3d 280 at 293, 662 N.E.2d 264 (1996): " * * * a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56 which affirmatively demonstrates the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56 to set forth specific facts showing there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." The record on summary judgment must be viewed in the light most favorable to the opposing party. *Williams v. First United Church of Christ*, 37 Ohio St.2d 150, 309 N.E.2d 924 (1974).

I

{¶15} R.C. Chapter 2744 governs a political subdivision's immunity from tort liability. The statute "sets out the method of analysis, which can be viewed as involving three tiers, for determining a political subdivision's immunity from liability." *Greene Cty. Agricultural Soc. v. Liming*, 89 Ohio St.3d 551, 556 (2000). The analysis begins with the general rule a political subdivision is not liable for damages arising from injury caused by an act of the political subdivision or one of its employees "in connection with a governmental or proprietary function." R.C. 2744.02(A). This general rule of immunity is not absolute. Under the second tier of the analysis, a court must consider whether any of the five exceptions to immunity enumerated in R.C. 2744.02(B) apply. Finally, under the third tier, if the court finds any of the R.C. 2744.03(B) exceptions apply, it must consider whether immunity may be reinstated based upon the defenses found in R.C. 2744.03(A)(1)-(5).

{¶16} The City's characterization as a political subdivision is not disputed, so it is presumptively immune, subject to the exceptions contained in R.C. 2744.02(B). McCormick maintained the exception to immunity enumerated in R.C. 2744.02(B)(2) was applicable as his damages were "caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." In *McCormick I*, this Court found a "question of material fact [existed] regarding whether the pond still functions that must be resolved prior to deciding whether [the City's] acts were propriety or governmental." *McCormick*, supra at para. 34.

{¶17} In its September 23, 2019 Order, the trial court overruled the City's motion for summary judgment, finding the City failed to present Civ. R. 56(C) quality evidence

establishing whether the Detention Pond was still functioning, which "was the genuine issue of material fact that the appellate court found was necessary to resolve prior to deciding whether [the City's] actions were governmental or proprietary." *Id.* at 3-4. Because the City failed to meet its initial evidentiary burden, the trial court concluded the same genuine issue of material fact remained unresolved; therefore, "reasonable minds could draw different conclusions from the undisputed facts in the record." *Id.* at 4.

{¶18} In its Brief to this Court, the City concedes McCormick established the existence of a genuine issue of material fact as to whether the City was engaged in a proprietary function.   Appellant City of Ontario Brief at 11.   However, the City asserts, because "the City Engineer exercised his professional engineering judgment and discretion in making a recommendation to the City Service Director that the headwall be removed from the detention basin * * * [and] made this recommendation because he felt that the detention basin and headwall were not functioning as designed", the City's immunity was restored as the exercise of engineering judgment and discretion falls within the ambit of R.C. 2744.03(A)(5).

{¶19}  R.C. 2744.03(A)(5) provides:

The political subdivision is immune from liability if the injury, death, or loss to person or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner.

**{¶20}** "The R.C. 2744.03(A)(5) discretionary defense extends only to activities that involve weighing alternatives or making decisions that involve a 'high degree of official judgment or discretion'." *Leasure v. Adena Local Sch. Dist*, 4ᵗʰ Dist. App. No. 11CA3249, 2012-Ohio-3071, ¶ 31, citing *Enghauser Mfg. Co. v. Eriksson Engineering Ltd.*, 6 Ohio St.3d 31, 451 N.E.2d 228 (1983), paragraph two of the syllabus. "Thus, political subdivisions are immune from liability for certain acts which go to the essence of governing, i.e., conduct characterized by a high degree of discretion and judgment in making public policy choices. *Id.* (Citations and internal quotations omitted.) The "exercise of judgment and discretion" contemplated by R.C. 2744.03(A)(5) does not apply to every decision a political subdivision makes. *Mathews v. Waverly*, 4th Dist. No. 08CA787, 2010-Ohio-347, ¶ 45. As this Court noted in *McCormick I*, "R.C. 2744.03(A)(5) is not to be interpreted so broadly as to encompass every choice between alternative courses of conduct". *McCormick*, supra at para. 32.

**{¶21}** We now must determine if the City is entitled to summary judgment on the issue of whether immunity was restored under R.C. 2744.03(A)(5).

**{¶22}** "Decisions involving the proper maintenance of the sewer or drainage system is a proprietary act, which is mandatory and not discretionary." *Nelson v. Cleveland*, 8th Dist. Cuyahoga No. 98548, 2013-Ohio-493, ¶ 30. "These decisions do not involve a high degree of discretion." *Id.* "Rather, they involve routine inspection and maintenance." *Id.* Conversely, we find decisions which require an engineering analysis could potentially involve "a high degree of discretion and judgment".

**{¶23}** As we noted in *McCormick I*, "[t]he uncertainty regarding the precise problem [the City] sought to resolve is matched by the conflicting and ambiguous

solutions described in the record." *McCormick*, supra at ¶ 25. This uncertainty creates the disputed fact as to whether the City's actions involved the exercise of judgment and discretion contemplated by R.C. 2744.03(A)(5).

{¶24} In a September 2, 2015 correspondence to James Childress, McCormick's attorney, Andrew Medwid, the City Law Director, noted the "Detention Pond was never totally removed by the City", explaining the headwall was removed in approximately 2008, "because it was a pond built in the middle of a waterway thus rendering it ineffective." Medwid added, "The City Engineer did not approve removal of the Detention Pond because it was never actually entirely removed, only a headwall was removed." Medwid acknowledged the City could not find evidence of "any studies or calculations being performed" relative to the removal of the headwall.

{¶25} In its response to Interrogatory No. 2 of McCormick's first set of interrogatories, the City stated "[t]he reason for the removal was that the Detention Pond was not big enough when built causing water to overflow around the dam and eroding the soil around the dam." In its response to Interrogatory No. 3, the City conceded "[n]o analysis was performed" prior to the removal of the headwall.

{¶26} In his deposition, Jeffrey Wilson, the City Service Safety Director, indicated any calculations performed prior to excavation would be kept indefinitely. Wilson explained, despite searching "through every record that we could find that had anything to do with this," the City was unable to find anything. Deposition of Jeffrey Wilson at pp. 63-64.

{¶27} In his deposition, Jerrod Swinehart, former Engineer for the City, testified Ontario City Code Chapter 937 requires the preparation of a comprehensive storm-

management plan prior to engaging in soil-disturbing activities, but indicated the City did not prepare such a storm-management plan prior to removing the headwall. Swinehart could not recall whether any alternatives to breaching the embankment were proposed. He explained the Detention Pond was not working 100% properly because it was overflowing too much. Deposition of Jerrod W. Swinehart at p. 89. Swinehart stated, "I think I would have done rudimentary calculations on what theoretically could happen." *Id*. at p. 126. However, Swinehart did not have a specific recollection regarding the decision making process, but testified the decision would have been collaborated between himself, the mayor/service director, and the street department. *Id*. at pp. 74-76. He added the final decision "would have been my recommendation with the service director." *Id*. at p. 76.

**{¶28}** We find genuine issues of material fact remain as to whether the City's decision to remove the headwall involved "weighing alternatives or making decisions that involve[d] a 'high degree of official judgment or discretion'." *Leasure*, supra, at ¶ 31 (Citation omitted).

**{¶29}** Assuming, arguendo, the City's decision constituted the type of discretion contemplated by R.C. 2744.03(A)(5), we, nonetheless, find genuine issues of material fact exist as to whether the City exercised that discretion in bad faith, or in a wanton or reckless manner.

**{¶30}** "Bad faith connotes a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud." *Thomas v. Bagley,* 3d Dist. No. 11–04–12, 2005–Ohio–1921, ¶ 49. (Internal quotations and citations omitted). "Wanton misconduct is the failure to exercise

any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result." *Anderson v. Massillon,* 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266, ¶ 33. "[I]t must be under such surrounding circumstances and existing conditions that the party doing the act or failing to act must be conscious, from his knowledge of such surrounding circumstances and existing conditions, that his conduct will in all common probability result in injury." *Id.* at ¶ 25 citing *Universal Concrete Pipe Co. v. Bassett,* 130 Ohio St. 567, 200 N.E. 843 (1936), paragraph two of syllabus. "Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Id.* at ¶ 34 (Citation omitted). "[R]eckless conduct is characterized by a substantial and unjustifiable risk of harm to others and a conscious disregard of or indifference to the risk, but the actor does not desire harm." *Id.*

**{¶31}** As noted, supra, Swinehart testified Ontario City Code Chapter 937 requires the preparation of a comprehensive storm-management plan prior to engaging in soil-disturbing activities, but indicated the City had not prepared such a storm-management plan prior to removing the headwall. The City admitted "[n]o analysis was performed" prior to the removal of the headwall. Wilson stated any calculations performed prior to excavation would be kept indefinitely, however, despite searching "through every record that we could find that had anything to do with this," the City was unable to find anything. There is, at a minimum, a genuine disputed issue of material fact as to whether the City considered the effects of the removal of the headwall on the McCormick Property.

**{¶32}** In addition, Swinehart stated, because the headwall was breached at the overflow location, the excavation should have been conducted at that location. However, the record reveals the headwall was actually breached at the site of the inflow for the control pipe, which was approximately 75 feet south of the overflow location. As a result of this error, the intermittent stream was rerouted away from its natural location onto the McCormick Property.

**{¶33}** Viewing the aforementioned evidence most strongly in favor of McCormick, we find reasonable minds could reach different conclusions as to whether the City acted in bad faith, or in a wanton or reckless manner with respect to the removal of the Detention Pond.

**{¶34}** Based upon the foregoing, we find the trial court did not err in denying the City's motion for summary judgment.

**{¶35}** The City's sole assignment of error is overruled.

**{¶36}** The judgment of the Richland County Court of Common Pleas is affirmed.

By: Hoffman, P.J.

Baldwin, J. and

Wise, Earle, J. concur