[Cite as *Kantorowski v. Seven Hills*, 2024-Ohio-5810.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
### COUNTY OF OHIO

CHERYL KANTOROWSKI,      :

    Plaintiff-Appellant,     :       No. 113745

    v.                :

THE CITY OF SEVEN HILLS, OHIO,   :

    Defendant-Appellee.     :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 12, 2024

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-22-961301

---

### *Appearances:*

Eques Law Group, Lindsey A. Wrubel, and Madeline M. Anich, *for appellant*.

Mazanec, Raskin & Ryder Co., L.P.A., Frank H. Scialdone, and Edmond Z. Jaber, *for appellee*.

SEAN C. GALLAGHER, J.:

{¶ 1} Plaintiff-appellant Cheryl Kantorowski appeals the decision of the trial court that granted the motion for summary judgment of defendant-appellee the City of Seven Hills, Ohio ("the city"), upon finding the city is entitled to immunity pursuant to R.C. Ch. 2744. Upon review, we affirm.

{¶ 2} On March 28, 2022, Kantorowski filed a complaint that raised a negligence claim against the city for its alleged failure to maintain its sewer system; specifically, the Waxberry detention basin. Her claim arose from a flood event that occurred on March 29, 2020, which caused up to four feet of water to fill the finished basement of her home on Waxberry Drive in Seven Hills, Ohio. Kantorowski alleged that the flood event was caused by the backup of the Waxberry detention basin, which is located near her home, and that she incurred damages as a direct and proximate result of the city's alleged negligent maintenance and operation of the Waxberry detention basin.

{¶ 3} In its answer, the city conceded that there is a Seven Hills detention basin near Kantorowski's home, but it denied other allegations in the complaint. Among its affirmative defenses, the city asserted that it is entitled to political-subdivision immunity. On August 16, 2023, the city filed a motion for summary judgment in which it argued that the city is entitled to immunity pursuant to R.C. Ch. 2744. The city's motion was opposed by Kantorowski.

{¶ 4} The record reflects that Kantorowski testified in her deposition that at 3:00 a.m. on March 29, 2020, it was pouring rain outside; she observed water flowing down the steps to her walkout patio and into her basement through the sliding glass doors; that there was about four feet of water in her basement; that she looked out front and saw a "river" between her house and her neighbor Karen Polick's home; and that the water was running from the backyard to the front. Kantorowski's lower patio outside her basement is surrounded by retaining walls

and had pooled with water. At the time of the flood, Kantorowski was unaware that there was a detention basin in the vicinity of her home. She was aware that there was a steep hill behind her home and that there had been prior incidents of water entering her basement through the sliding doors, albeit not as severe.

{¶ 5} Karen Polick testified in her deposition that she woke up at 8:00 a.m. that day and could see a debris path and a flow line from water that came into her yard. At the time she awoke, the water had subsided. She observed some water in the swale or spillway that is between her home and Kantorowski's home. When she walked up to the basin around 12:30 p.m., she observed the water was "level with the ground and seeping over" the sides of the basin, but she did not see water actually flowing out of the basin. Although Polick had not observed the city working either on the detention basin or in the spillway or swale area prior to the March 2020 flood event, she indicated that there were a couple times the city had raked debris away from the opening of the sewer in the basin, and she recalled four or five times that the city had "looked" at the basin over the past 12 years. She also testified that both her husband and her other neighbor had called the city about maintenance. She indicated that after the flood, the city came out and did a "massive cleaning."

{¶ 6} Michael Vano, a foreman employed by the city, testified in his deposition that a detention basin, such as the Waxberry detention basin, acts to slow down the flow of water and has an outlet pipe. He testified that the city performs visual inspections of its basins at least a half dozen times a year, though the city did not keep any written records of the inspections. He indicated that the city had

previously conducted cleanings around the front of the Waxberry detention basin's head wall. Additionally, Vano testified that generally, the city has "pre-rain events" where if the forecast looks like it is going to get severe, "we'll go out and check all those areas, make sure [the basins] are clear." With respect to the rain event that occurred in March 2020, Vano testified that there was a lot of overland flooding and street flooding. When he viewed the Waxberry detention basin following the rain event, he observed that there was a ring close to the top of the basin, which was indicative of the water receding. He also observed that Kantorowski's home is at the base of a hillside and that nothing had been done to prevent runoff water from going down the stairs and into the walk-out basement. He indicated that "[w]henever you have water flowing over land, it's going to carry. It's going to carry debris . . ., whether it's coming down a hillside or through a creek channel."

{¶ 7} An investigation performed after the flood by the Cuyahoga Soil & Water Conservation District revealed problems with the Waxberry detention basin, including erosion issues, a large amount of accumulated sediment, accumulated debris at the outlet structure, invasive plants, and other issues. Additionally, Kantorowski referenced her expert report, which purportedly found the detention basin had not been maintained, was overgrown, had lost some capacity, and had other issues.[1] However, there is no evidence of any determination or expert opinion that the basin had overflowed during the March 29, 2020 storm, or that the water

---

[1] Kantorowski's expert report does not appear to have been attached to her opposition brief, authenticated, or made part of the record.

infiltrating Kantorowski's basement was from the detention basin. The city provided a rebuttal report from Hydrosphere Engineering suggesting otherwise.

{¶ 8} The Hydrosphere Engineering report indicated that the March 29, 2020 rainfall event was not great enough to cause the Waxberry detention basin to overtop. Further, the report found that while the storm event was severe, the detention basin had sufficient capacity to store runoff volumes from severe rainfall events without overtopping and that there were no confirmed reports that the detention basin overflowed during the March 29, 2020 rainfall event. The Hydrosphere report also determined that runoff volume bypassing the basin and flowing toward Kantorowski's property contributed to the basement flooding that occurred. Other deposition testimony and evidence were presented that this court has thoroughly reviewed.

{¶ 9} On February 29, 2024, the trial court granted the city's motion for summary judgment upon finding the city is entitled to political-subdivision immunity. Kantorowski timely filed an appeal.

{¶ 10} Under her sole assignment of error, Kantorowski claims the trial court erred by granting summary judgment on her claim that the city negligently failed to maintain the Waxberry detention basin.

{¶ 11} Appellate review of summary judgment is de novo, governed by the standard set forth in Civ.R. 56. *Argabrite v. Neer*, 2016-Ohio-8374, ¶ 14. Summary judgment is appropriate only when "[1] no genuine issue of material fact remains to be litigated, [2] the moving party is entitled to judgment as a matter of law, and, [3]

viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach a conclusion only in favor of the moving party." *Id.*, citing *M.H. v. Cuyahoga Falls*, 2012-Ohio-5336, ¶ 12.

{¶ 12} The city is a political subdivision that pursuant to R.C. 2744.02(A)(1) generally "is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." R.C. 2744.02(B) lists several exceptions to the general grant of immunity, and if an exception applies, R.C. 2744.03 provides defenses to liability that may be asserted to restore immunity. The determination of whether a political subdivision is immune from liability pursuant to R.C. Ch. 2744 is usually pivotal to the ultimate outcome of a lawsuit. *Coleman v. Portage Cty. Engineer*, 2012-Ohio-3881, ¶ 14, citing *Summerville v. Forest Park*, 2010-Ohio-6280, ¶ 39.

{¶ 13} Kantorowski claims the R.C. 2744.02(B)(2) exception to the general grant of immunity applies to this case. R.C. 2744.02(B)(2) states: "Except as otherwise provided in sections 3314.07 and 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." R.C. 2744.01(G)(2)(d) defines a "proprietary function" to include "[t]he maintenance, destruction, operation, and upkeep of a sewer system[.]" Kantorowski argues that the city negligently failed to maintain the Waxberry detention basin and that this led to the flooding of her property. She

argues there was evidence that the basin was not properly maintained, had eroded and accumulated heavy sediment over time, a debris line was observed, and that water could be seen flowing like a river alongside her home. Despite the city's evidence showing otherwise, she asserts that the flood to her home was likely to have been caused by a failure of the Waxberry detention basin and that a logical conclusion is that heavy rain caused the Waxberry detention basin and drainage easement to overflow causing the flooding of her home.

{¶ 14} The city claims that no exception to the city's immunity under R.C. 2744.02(A)(1) can be established in this case. The city asserts that Kantorowski failed to present evidence to establish the flooding event on March 29, 2020, was proximately caused by the overflow of the Waxberry detention basin. The city's position is that the detention basin did not overflow and that the water entering Kantorowski's basement was the result of a significant rainstorm event, the natural runoff from the steep hill behind Kantorowski's property, and the stone patio and retaining walls that created a pool outside Kantorowski's walkout basement. The city points to the lack of any direct observation of the basin overflowing, to a city employee's observation of a distinctive ring below the top of the basin after the rain event that reflected the water level had receded, and to the Hydrosphere Engineering report, which determined the basin had sufficient capacity to detain the storm water without overflowing and that the runoff water flowing toward Kantorowski's property was part of the natural watershed. The city also claims that Kantorowski cannot establish that the city was on notice of any maintenance issues

with the detention basin at the time of the flooding event and that there was a lack of evidence demonstrating that it was negligent in maintaining the detention basin. Additionally, the city claims that it is entitled to discretionary immunity under R.C. 2744.03(A)(5) for any discretionary decisions or acts involving the storm sewer system.

{¶ 15} We find that the city's maintenance of its sewer system, including the Waxberry detention basin, is a proprietary function to which the general grant of immunity applies under R.C. 2744.02(A)(1). However, we are unable to find that Kantorowski presented sufficient evidence to be able to demonstrate that the R.C. 2744.02(B)(2) exception to immunity applies in this case. "In order to establish negligence, one must show the existence of a duty, a breach of that duty, and the breach was the proximate cause of an injury." *Nelson v. Cleveland*, 2013-Ohio-493, ¶ 22 (8th Dist.), citing *Menifee v. Ohio Welding Prods., Inc.*, 15 Ohio St.3d 75, 77 (1984). Here, even if there were an issue concerning the city's alleged failure to maintain the detention basin, Kantorowski failed to present evidence to demonstrate the flooding of her basement on March 29, 2020, was proximately caused by an overflow of the detention basin, and the city presented evidence demonstrating otherwise. In the absence of evidence to demonstrate proximate cause, Kantorowski cannot succeed on her claim.

{¶ 16} Unlike prior cases before this court, this is not a case in which the question of whether a pond or a retention basin is part of the city's storm water system is at issue. In this case, the city concedes that the detention basin is part of

its sewer system. This also is not a case in which there is evidence that a city's alleged failure to maintain its sewer system caused the plaintiff's loss or injury. There is no evidence in the record showing that the basin overflowed on March 29, 2020, nor is there evidence showing that the upkeep of the basin was the proximate cause of the flooding event. The facts in the cases that are cited by appellant are readily distinguishable. Contrary to Kantorowski's argument, even when viewing the evidence in a light most favorable to appellant, we are unable to find a causal link can be shown from the facts in the record before us.

{¶ 17} Although we certainly empathize with Kantorowski's property loss, there simply is a lack of any evidence demonstrating her loss was proximately caused by the city's alleged failure to maintain the detention basin. Therefore, Kantorowski cannot establish the R.C. 2744.02(B)(2) exception to the general grant of immunity applies in this case. Finally, this court does not need to engage in an analysis regarding available defenses provided in R.C. 2744.03 if no exception under R.C. 2744.02(B) can be found to remove the general grant of immunity. *See Fink v. Twentieth Century Homes, Inc.*, 2013-Ohio-4916, ¶ 20 (8th Dist.), citing *Nelson* at ¶ 14.[2]

---

[2] We note, however, that "[d]ecisions involving the proper maintenance of the [city's] sewer or drainage system is a proprietary act, which is mandatory and not discretionary" and that generally R.C. 2744.03(A)(5) does not apply to such decisions that involve routine inspection and maintenance. *Nelson* at ¶ 30.

{¶ 18} After thoroughly reviewing the record, we find the city is entitled to summary judgment on its claim of political-subdivision immunity. Appellant's assignment of error is overruled.

{¶ 19} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
SEAN C. GALLAGHER, JUDGE

MARY J. BOYLE, P.J., and
MICHAEL JOHN RYAN, J., CONCUR