[Cite as *Ohio Bell Tel. Co. v. Cleveland*, 2025-Ohio-2988.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

THE OHIO BELL TELEPHONE
COMPANY,                                             :

      Plaintiff-Appellee,                     :

      v.                                              :

CITY OF CLEVELAND,                                  :

      Defendant-Appellant.                    :

No. 114531

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 21, 2025

---

Civil Appeal from the Cuyahoga County Common Pleas Court
Case No. Cv-22-973226

---

### *Appearances:*

W. H. Hunt Legal Group, LLC, William H. Hunt, and
Nicholas A. Gulish, *for appellee.*

Mark D. Griffin, Cleveland Director of Law, and Jerome A.
Payne, Jr., and James R. Russell, Jr., Assistant Directors
of Law, *for appellant.*

ANITA LASTER MAYS, J.:

{¶1} Defendant-appellant City of Cleveland ("the City") appeals the trial court's denial of its motion for summary judgment based on political-subdivision immunity. We affirm the trial court's decision.

{¶2} According to plaintiff-appellee The Ohio Bell Telephone Company ("Ohio Bell"), on December 22, 2021, the City's water department was notified that water had been leaking onto the street near or at 6205 Quimby Avenue. That same day, a water department crew was dispatched to assess the leak. A leak was confirmed, and the water department called in an OUPS ticket.[1] No further investigation was taken until December 27 and 28. On December 31, 2021, the water department dispatched a repair crew, led by Luis Barroso ("Barroso"), to investigate. According to the City, the site of the water main break was unstable, and the surrounding soil was eroded. As a result of the significant damage, Barroso and his crew installed a shoring box to prevent the walls from collapsing. The shoring box extended several feet above street level, as a precaution, to prevent further collapse of the road should it become unstable. The shoring box was installed next to the Ohio Bell brick utility vault.

{¶3} Barroso's water crew was relieved by Reinaldo Cotton ("Cotton"), water pipe supervisor, and his team to complete the repair. Cotton's team's task was to fill the hole with appropriate material and remove the shoring box. Cotton noticed that the area was unstable and the walls were waterlogged. However, the hole was partially filled anticipating that the owner of the brick utility box might need to make repairs or do maintenance. A steel plate was placed over the hole,

---

[1] OUPS means Ohio Utility Protection Service. An OUPS ticket, also called an 811 ticket, is the industry term for a request to mark utility lines before any excavation work begins. Ohio law requires this to prevent potentially costly and dangerous damage to buried utilities.

and they left the site. Cotton later contacted the water department's dispatch to contact Ohio Bell. After the repair was completed, Ohio Bell alleged that while workers from the water department were removing the shoring box, their brick utility vault collapsed. However, per the City's account, the shoring box was properly installed to prevent the road from collapsing onto the excavation site, and they maintain that neither Barroso nor his crew touched the vault, the manhole, or its casting.

{¶4} On January 13, 2022, Ohio Bell discovered the plate after responding to a customer's trouble ticket. Ohio Bell discovered the damage to the manhole and the vault and repaired the damage.

{¶5} On December 30, 2022, Ohio Bell filed a complaint against the City alleging an action for negligence and wanton and reckless misconduct. Ohio Bell argued, in its complaint, that the City negligently and carelessly damaged Ohio Bell's real property fixture and removed Ohio Bell's manhole and buried conduit without replacing it, in breach of the common law standard of care for excavators and the requirements under R.C. 3781.25. Ohio Bell also asserted that as a direct and proximate result of the City's negligence and breach, Ohio Bell suffered damages in the amount of $104,948.44. Ohio Bell further alleged that the City wantonly and recklessly damaged Ohio Bell's property when the City removed a manhole and failed to replace or notify Ohio Bell that the manhole and the other fixtures had not been restored.

**{¶6}** On February 27, 2023, the City filed its answer and denied all of Ohio Bell's allegations. The City also asserted several affirmative defenses including that the City is entitled to all defense and immunities under R.C. Ch. 2744. On September 10, 2024, the City filed a motion for summary judgment, again asserting immunity. On October 22, 2024, the trial court denied the City's motion stating: "Upon review, the Court finds that defendant City of Cleveland is not entitled to summary judgment as a matter of law, as genuine issues of material fact exist. Civ.R. 56(C). Accordingly, defendant's motion for summary judgment, filed 9/10/2024, is denied." Journal Entry No. 187723080 (Oct. 22, 2024).

**{¶7}** On November 6, 2024, the City filed an appeal, assigning two errors for our review:

1. It was reversible error for the lower court to hold that there were material issues of fact when it denied the City of Cleveland's motion for summary judgment based on statutory immunity.

2. It was reversible error for the lower court when it failed to reinstate immunity as a matter of law.

## I. Jurisdiction

**{¶8}** As an initial matter, we must address jurisdiction. "Typically, an order denying a motion for summary judgment is not a final, appealable order." *Garmback v. Cleveland*, 2022-Ohio-1490, ¶ 11 (8th Dist.), quoting *Ceasor v. E. Cleveland*, 2018-Ohio-2741, ¶ 13 (8th Dist.). However, R.C. 2744.02(C) provides: "An order that denies a political subdivision or an employee of a political

subdivision the benefit of an alleged immunity from liability as provided in this chapter or any other provision of the law is a final order."

{¶9} "While we are authorized to review the trial court's decision, the scope of that review is limited." *Garmback* at ¶ 12, quoting *Ceasor* at ¶ 14. "We may only examine 'alleged errors in the portion of the trial court's decision that denied the benefit of immunity.'" (Cleaned up.) *Id.*, quoting *id.*

## II.    Political-Subdivision Immunity

### A.    Standard of Review

{¶10} "Questions of immunity are matters of law, so they are particularly apt for resolution by way of summary judgment." *Powell v. Cleveland*, 2022-Ohio-4286, ¶ 7 (8th Dist.), citing *FirstEnergy Corp. v. Cleveland*, 2008-Ohio-5468, ¶ 7 (8th Dist.). "We review a trial court's decision on a motion for summary judgment de novo." *Id.*, citing *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). "In a de novo review, this court affords no deference to the trial court's decision, and we independently review the record to determine whether the grant of summary judgment is appropriate." *Id.*, citing *Hollins v. Shaffer*, 2009-Ohio-2136, ¶ 12 (8th Dist.).

{¶11} Summary judgment is appropriate when, construing the evidence most strongly in favor of the nonmoving party, (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can only reach a conclusion that is adverse to the nonmoving party. Civ.R. 56(C).

{¶12} "The party moving for summary judgment bears the burden of demonstrating that no material issues of fact exist for trial." *Powell* at ¶ 9, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996). The moving party has the responsibility of informing the trial court of the reason for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claims. *Id.* "After the moving party has satisfied this initial burden, the nonmoving party has a reciprocal duty to set forth specific facts by the means listed in Civ.R. 56(C) showing that there is a genuine issue of material fact." *Id.*, citing *id.*

{¶13} "Determining whether a political subdivision is immune from tort liability involves a three-step analysis." *Id.* at ¶ 10, citing *Elston v. Howland Local Schools*, 2007-Ohio-2070, ¶ 10. R.C. 2744.02(A)(1) sets forth the general immunity applicable to political subdivisions. It provides that "a political subdivision is generally not liable in a civil action for injury, death, or loss to person or property incurred while performing governmental or proprietary functions." R.C. 2744.02(A)(1). Then the burden is on the plaintiff to overcome this statutory immunity by showing that one of the five exceptions contained in R.C. 2744.02(B) applies. *Powell* at ¶ 10. "If a plaintiff demonstrates that one of the five enumerated exceptions to political subdivision immunity applies, then the final step permits the political subdivision to then assert one of the defenses set forth in R.C. 2744.03(A) to revive or reinstate its immunity."

**B.    Law and Analysis**

{¶14} We will review the City's assignments of error together because they both pertain to the City's assertion that they are entitled to political-subdivision immunity under R.C. 2744.02(B)(2) because there is no evidence of negligence or a negligent performance by a city employee.

{¶15} In this case, there is no dispute that the City is a political subdivision and that it was performing a governmental function.  *See* R.C. 2744.01(G)(2)(c) (stating the establishment, maintenance, and operation of a utility, including, but not limited to . . . a municipal corporation water supply system is a government function).  As such, a political subdivision is generally immune from tort liability in its maintenance and repair of a municipal corporation water supply system unless one of the five exceptions contained in R.C. 2744.02(B) applies.

{¶16} The parties disagree about whether Ohio Bell established that the City's conduct was negligent.  Under the second tier of the immunity analysis, a political subdivision is "liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions."  R.C. 2744.02(B)(2).

{¶17} In its motion for summary judgment, the City alleged that Ohio Bell failed to establish that it acted negligently in repairing the water main break.  Ohio Bell suggested that tiers one and two were met and moved to the third tier to establish that immunity was not reinstated under R.C. 2744.03.  In response, the

City argued that there was no need to consider whether immunity was restored because Ohio Bell failed to establish actionable negligence.

{¶18} In order to remove the City's immunity under R.C. 2744.02(B)(2), Ohio Bell needed to establish the City was negligent in its handling of the water main repair by showing "the existence of a duty, a breach of that duty, and that the breach was the proximate cause of an injury." *DeBarr v. Cleveland*, 2023-Ohio-4121, ¶ 28 (8th Dist.), quoting *Nelson v. Cleveland*, 2013-Ohio-493, ¶ 22. "Negligence is not presumed simply from proof of an injury caused by some act of the defendant." *Id.* "'The burden is on the plaintiff to prove by a preponderance of the evidence that the defendant failed to exercise the care that a reasonably prudent person is accustomed to exercise under the same or similar circumstances.'" *Id.*, quoting *Riveredge Dentistry Partnership v. Cleveland*, 2021-Ohio-3817, ¶ 24 (8th Dist.), citing *Republic Light & Furniture Co. v. Cincinnati*, 97 Ohio App. 532, 536-537 (1st Dist. 1954). "If the standard of care is not common knowledge to the jury, the plaintiff must also introduce 'evidence from which the jury may reasonably infer the appropriate standard of care in the situation.'" *Id.*, quoting *Leslie v. Cleveland*, 2015-Ohio-1833, ¶ 16 (8th Dist.), citing *Republic Light* at 532-533.

{¶19} "In the absence of duty, liability cannot exist." *Id.* at ¶ 29, citing *Stein v. Honeybaked Ham Co.*, 2006-Ohio-1490, ¶ 10 (9th Dist.); *Feichtner v. Cleveland*, 95 Ohio App.3d 388, 394 (8th Dist. 1994). "Duty depends on '(1) the relationship between the parties, and (2) the foreseeability of injury.'" *Id.*, quoting

*E. Ohio Gas Co. v. Cleveland*, 2019-Ohio-1248, ¶ 23 (8th Dist.). "It is not necessary for the defendant to anticipate the specific injury alleged in a case." *Id.*, quoting *Profitt v. Tate Monroe Water Assn.*, 2013-Ohio-2278, ¶ 19 (12th Dist.). "'The test for foreseeability is whether a reasonably prudent person, under the same or similar circumstances as the defendant, should have anticipated that injury to the plaintiff or to those in like situations is a probable result of the performance or nonperformance of an act.'" *Id.*, quoting *Commerce & Industry Ins. Co. v. Toledo*, 45 Ohio St.3d 96, 98 (1989). Accordingly, in order to establish that the City was open to liability under R.C. 2744.02(B)(2), Ohio Bell needed to establish that there remained a genuine issue of material fact as to the City's negligence.

{¶20} "Whether a duty exists is a question of law." *DeBarr* at ¶ 30, citing *Stein* at ¶ 10. "Whether a defendant 'properly discharged [its] duty of care' is normally a question for the jury." *Id.*, quoting *Thayer v. B.L. Bldg. & Remodeling, L.L.C.*, 2018-Ohio-1197, ¶ 24 (8th Dist.), citing *Commerce & Indus. Ins. Co,* 45 Ohio St.3d 96, 98 (1989). "Whether the defendant properly discharged a duty becomes a jury question when a plaintiff establishes a duty is owed him and offers evidence showing the defendant breached that duty." *Id.*, citing *Blancke v. New York C. R. Co.*, 103 Ohio St. 178, 185-186 (1921), paragraph three of the syllabus.

{¶21} The City, in its brief, does not argue that a duty did not exist, but rather that they did not breach the duty because they did not come in contact with the brick vault or interact with the manhole cover and casting. Ohio Bell, however,

argues that the City breached by failing to notify Ohio Bell of the damage as required by R.C. 3781.30(A)(6); delaying their response to the water main break; failing to properly install and remove the shoring box; and failing to properly support the walls of Ohio Bell's compromised facilities at risk of collapsing.

{¶22} The dispute between the City and Ohio Bell are genuine issues of material fact. We are not stating that the City was negligent, but rather the City has not established that it has met the criteria for the second tier. However, the City further argues that even if negligence is determined, the City's immunity is restored by R.C. 2744.03(A)(5), which states:

> In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability: The political subdivision is immune from liability if the injury, death, or loss to person or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner.

{¶23} The City's argument is misplaced. "'Immunity operates to protect political subdivisions from liability based upon discretionary judgments concerning the allocation of scarce resources; it is not intended to protect conduct which requires very little discretion or independent judgment.'" *Buttari v. Norwalk*, 2023-Ohio-4163, ¶ 52 (6th Dist.), quoting *Hall v. Ft. Frye Local School Dist. Bd. of Edn.*, 111 Ohio App.3d 690, 699 (4th Dist. 1996); *see also Addis v.*

*Howell*, 137 Ohio App.3d 54, 60 (2d Dist. 2000). "'Immunity does not apply to the negligence of employees in the details of carrying out the activity even though there is discretion in making choices.'" (Cleaned up.) *Id.*, quoting *McVey v. Cincinnati*, 109 Ohio App.3d 159 (1st Dist. 1995). "'Once a decision is made, however, the government entity still can be liable for the negligent implementation of its decision.'" *Id.*, quoting *Seiler v. Norwalk*, 2011-Ohio-548, ¶ 115 (6th Dist.), citing *Enghauser Mfg. Co. v. Eriksson Engineering Ltd.*, 6 Ohio St.3d 31, 32 (1983).

{¶ 24} In this case, the water department was notified of a water leak on December 22 and on the same day a crew was dispatched to make an assessment. The leak was confirmed, an OUPS ticket was created, and no further investigation occurred until five and six days later. On the ninth day, December 31, a repair crew arrived at the scene. Upon arrival, Barroso's team observed waterlogged walls that caused the site to become severely unstable and potentially dangerous. They also noticed the Ohio Bell's utility vault that had sustained water damage but was still intact. For worker safety, a shoring box was installed to ensure that the walls around the crew did not collapse. After completing the repairs, Cotton's team appeared to fill the hole. Cotton had observed the waterlogged walls and Ohio Bell's utility vault. At no time, prior to filling the hole, did either crew notify Ohio Bell. Cotton stated that upon removing the shoring box the utility box collapsed in an initial report. He later stated 45 minutes after removing the shoring box the utility vault collapsed. Either way, Cotton did not immediately notify Ohio Bell or dispatch the water

department to immediately notify Ohio Bell.  Cotton later requested notification be sent to Ohio Bell that their utility box may need repairs.

**{¶ 25}** At this early stage in the case, Ohio Bell has established that material issues of fact exist to determine whether the City was indeed negligent and the City has failed in establishing a defense to reinstate immunity.  *See Ohio Bell Tel. Co. v. Cleveland*, 2024-Ohio-1475, ¶ 21-25 (8th Dist.).  We cannot say that the trial court erred in determining that a genuine issue of material fact existed, that the City's immunity was not restored, and in denying the City's motion for summary judgment.

**{¶ 26}** Therefore, the City's assignments of error are overruled.

**{¶ 27}**  Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

EILEEN T. GALLAGHER, P.J., CONCURS IN JUDGMENT ONLY;
MARY J. BOYLE, J., CONCURS IN JUDGMENT ONLY